*Mullett, J;
 

 The matters returned to the
 
 cer-
 
 ;
 
 tiorari,
 
 and the objections made to those matters, may be divided into three classes. The
 
 first
 
 class, to include that part of the proceedings necessary to give the recorder power or jurisdiction to hear and determine the application proposed to be submitted to him; the
 
 second,
 
 to include the decisions of the recorder upon questions of law which arose in the course of the proceedings before him, after he assumed jurisdiction; and the
 
 third,
 
 the recorder’s final decision on the merits. According to the view which I have taken of the case, it is unnecessary to consider the second and third classes of objections; or to ^inquire whether they are properly brought up for review by a common-law
 
 certiorari.
 

 The first objection to the jurisdiction of the recorder, is founded on a supposed defect in the
 
 proof
 
 of the service of a copy of the, petition, account and inventory, with the nature of the time and place at which, and the officer to, whom, they were to be presented. The 14th section of the act under which these proceedings were had, required that these papers should be personally
 
 *107
 
 served on the plaintiff, by wbom the defendant should be prosecuted, or his attorney, &c., fourteen days previous to the presentation of the petition to the officer. But as Harlow
 
 appeared
 
 before the recorder, at the presentation of the petition, and made no complaint as to the time or manner of the service, but only to the proof of it, this point was unimportant, and I shall assume, that the service was duly made, without reference to the pretended defects in the proof.
 

 The most serious objections to the'jurisdiction of the recorder, are those which relate to the matters of the petition, and the papers connected with it. It is claimed, that they do not make a case which entitled the petitioner to the benefit prayed for, nor one which the recorder was authorized to hear and decide. The investigation of these questions may require a recurrence to the act of 1831, “to abolish imprisonment for debt and to punish fraudulent debtors.”
 

 The great and leading objects of that act were, to abolish imprisonment for debt, and to provide more summary and stringent means than then existed, for a certain class of creditors, who could and chose to resort to them, to coerce the application óf their debtors’ pro perty, legal and equitable, to the payment of their debts It did not repeal any of the then existing statutes on the subject of insolvent debtors, the assignment of their property, or the exemption of their persons from imprisonment. On the contrary, it contemplated their continuance, and referred to and adopted some of the provisions contained in them. The several statutes on' these subjects, although passed at different times, were all included in chapter 5, title 1, *of the 2d part of the revised statutes of 1830, in .which they are arranged under distinct articles, and several of them are so referred to in the act of 1831. By the first section of the act of 1831, arrest and imprisonment on any
 
 civil process,
 
 in any suit or proceeding for the recovery of any
 
 *108
 
 money, due upon any judgment or decree, founded on a contract, or due upon any
 
 contract,
 
 or for the recovery of any damages for the non-performance of a
 
 contract,
 
 are abolished, except on certain contracts mentioned in the second section. By the 3d and 4th sections, any creditor who has obtained a judgment, or commenced a suit against his debtor, in a court of record, for a cause of action for which he cannot, by the provisions of the act, arrest or imprison him, may obtain a warrant for his arrest, from a judge, or other officer therein mentioned, upon establishing, in the way provided, one or more of several specified particulars, tending to show fraud in the debtor, in contracting the debt, or actual or intended fraud, in removing, concealing or assigning his property, with intent to defraud his creditors, or in refusing to apply certain property, not then liable to execution, to the payment of any judgment or decree against him.
 

 If, upon the debtor’s being brought before the officer, on the warrant, and examined in the way pointed out by the statute, the allegations against him are established, to the officer’s satisfaction, he may commit the debtor to the county jail, unless he do one of five specified things, mentioned in the 10th section of the act; the fourth of which is, enter into a bond to the complainant, with sureties, &c., conditioned that he will, within thirty days, apply for an assignment of all his property, and for a discharge, as provided in the subsequent sections of the act, and diligently prosecute the same, until he obtain such discharge.
 

 By the 12th section of the act, any person
 
 committed
 
 as above provided; or who shall have
 
 given the bond
 
 specified in the 4th subdivision of the 10th section of the act; or against whom any suit shall have been commenced in a court of record, in which he cannot, by the provisions of the act, be
 
 *arrested
 
 or
 
 imprisoned,
 
 may present a petition to the proper, officer, pray
 
 *109
 
 ing that his property may be assigned, and that he may have the benefit of the provisions of the act.
 

 The statute does not, itself, or by reference to any other statute or proceeding, prescribe the form or substance of the petition, except the
 
 prayer;
 
 but it will not be claimed, that the prayer alone is sufficient; that the petitioner is entitled to the benefits prayed for, by merely asking for them. The petition must show a case of which the officer to whom it is presented has jurisdiction, and which, if true, would entitle the petitioner to the things prayed for from the officer. Although the 12th section gives the right of petitioning to three classes or descriptions of debtors, to wit, to those who have been committedto those who have given the bond to avoid commitment; and to those who have had suits of a certain description commenced against them; yet, in one important respect, their conditions are alike; they must all be debtors who have been proceeded against for the collection of a debt or demand, arising on contract, for which they could not be arrested or imprisoned, according to the provisions of the statute under which they claim the right to petition. The statute relates to no other judgments or suits, and the officer has jurisdiction in no other cases. The petition should, therefore, show, affirmatively and clearly, that the judgment or suit from which the petitioner seeks to be discharged, is one of that description.
 
 [2]
 

 The petitioner, in this case, stated in substance, that a suit had been commenced against him in a court of record, in which, by the provisions of the act to abolish imprisonment for debt, &c., he could not be arrested or imprisoned, and therefore prayed that his property might be assigned, and that he might have the benefit of the said act, &c.; and further set forth and stated that the suit was brought by John Harlow, in the superior
 
 *110
 
 court of tbe city of New York, prior to tbe first of May 1843, for tbe sum of $4000, and upwards. That by virtue of a warrant issued by AaroN VaNderpoel, Esq., one of the justices of tbe said court, on tbe application and ^affidavit of John Piarlow, be, tbe petitioner, was arrested, and after further proceedings in the premises, thereafter, on the 4th day of September, instant, executed a bond, with sureties, to the said John Harlow, pursuant to the provisions contained in the 4th subdivision of the 10th section of the said act.
 

 This petition did not show the nature of the suit commenced by Harlow against the petitioner. It is stated, that it was brought for the sum of $4000, and upwards; but did not state what that demand was for; for aught that appears, it might have been for an assault and battery, a slander, or the breach of one of the contracts mentioned in the second section of the act. This delect is not helped by the subsequent mention of the warrant issued by Judge VaNderpoel, because it is not shown, what that warrant was for, nor that there was any connection between it and the suit, except that they were both prosecuted by Harlow. The petition did not show the nature of the proceedings before Judge VaNderpoel, upon the return of the warrant, nor any decision of his thereupon, from which it can be seen what the subject or matter before him was. Such a petition was insufficient to give the recorder jurisdiction of the matter attempted to be presented to him. (5 Hill 330; 6 Id. 311.) I think, that the recorder’s decision, made on the 16th day of October, to assume jurisdiction of the matter presented to him, was clearly wrong, and that that error was not cured by the subsequent amendment of the petition, on the 17th.
 

 I am also of opinion, that the account and inventory presented with the petition, was defective, and insufficient to authorize the recorder to receive and act upon
 
 *111
 
 the petition. The 13th section of the act under which those proceedings were attempted to be had, requires, that on presenting the petition, the defendant shall deliver an account of his creditors, and an inventory of his estate, similar in all respects to the account and inventory required of the debtor by the sixth article of title first, and chapter fifth, of the second part of the revised statutes; and shall annex to the said petition, account *and inventory, an affidavit, similar in all respects to the oath, required by
 
 the fifth section of the sixth article of the aforesaid title and chapter.
 
 The
 
 sixth article
 
 referred to, relates to voluntary assignments by a debtor imprisoned in execution in civil causes; and after providing for the petition to be presented by such debtor, requires, that such petition shall have annexed to it, a just and true account of all his estate, real and personal, in law and equity, and all charges affecting the same,
 
 both as such estate and charges existed at the time of his imprisonment, and as they exist at the time of preparing such petition, together with a just and true account of all deeds, securities, books and writings whatsoever, relating to said estate and the charges thereon,
 
 with the names and places of abode of the witnesses to such deeds, securities and writings; but does not require the debtor to give an
 
 account of his creditors.
 
 On account of this supposed discrepancy, it has been suggested, that this reference to the
 
 sixth article
 
 might have been a mistake, and that the
 
 fifth
 
 article was intended. (2 Barb. Ch. 296.)
 

 With all due deference to the learned jurist who made this suggestion, it is, at best, founded on conjecture, and it appears to me, not a conjecture of the most probable character. The same section and the same sentence of the act of 1831, which refers to the
 
 sixth article
 
 of title first, and chapter five, of the second part of the revised statutes, for the form of the
 
 inventory,
 
 also refers to the fifth section of the
 
 “ sixth
 
 article of the aforesaid title and
 
 *112
 
 chapter,” for the form of the
 
 oath.
 
 Now, the fifth section of article
 
 sixth
 
 does contain the form of an oath which might have been the subject of the reference, -while neither the fifth section of
 
 article fifth,
 
 nor of any other article in the chapter, gives any form of an oath or makes any mention of one. The correctness of the reference to the fifth section of the
 
 sixth article,
 
 in respect to the form of the oath, is, therefore, proved, by its concurrence, not only with the article referred to, but with the section, and the subject of the section; which leaves the suggestion of a mistake in the reference as to the
 
 inventory,
 
 weakened, by the improbable supposition, *^la^ ^11 Erring to the same statute twice, in the same sentence, and in the same words, the legislature was correct in one reference and mistaken in the other, or that they were mistaken in both references. That in referring to the form of the
 
 inventory,
 
 they mistook the
 
 article,
 
 and in referring to the form of the
 
 oath,
 
 they mistook the section, and referred to one which made no mention of the subject for which the reference was made. Besides, the fifth article, supposed to be the one intended to be referred to, gives no form of an inventory of the estate, but, for that purpose, refers to the
 
 third
 
 article, which relates to “voluntary assignments, made pursuant to the application of an insolvent and his creditorsa system altogether different from the one contemplated by the act of 1831, both in its proceedings and consequences. None of the articles in this chapter except the
 
 sixth,
 
 requires that the debtor should annex to his petition, an account of his estate and the charges affecting the same, both as such estate and charges existed at the time of his imprisonment, and as they exist at the time of preparing his petition; nor would such requirement be applicable to the situation of the debtors in the other cases; while such an inventory is required by the sixth article, and is applicable to the debtor’s situation. The subject-matter of the two kinds
 
 *113
 
 of inventories are essentially different, and the cases and proceedings in which, they are to be used, and the objects of such proceedings, are materially different.
 

 The suggestion of a mistake in the reference, alluded to, therefore, involves not only a mistake in the
 
 number
 
 of the article referred to, hut also the consequential mistake in the
 
 matter
 
 which the legislature, in the solemn exercise of their power to make statutes, intend to adopt, as part of the laws of the land, and the belief that such mistake was suffered to pass unnoticed through all the various stages of legislation. It must be confessed, that this is carrying the doctrine of judicial supposition to its full extent, and, I think, further than we are authorized to go in the premises. In the first place, there is no necessity for *reading the 13th section of the act
 
 of
 
 1831, so as to make it inconsistent with the statute to which it expressly refers. The similarity required by it, may be applied only to the inventory of the estate and the charge saffecting the same, and the
 
 account
 
 of all deeds, securities, books and writings relating to such estate and charges, without the alteration of a word in the sentence, by the simple removal of a comma. The sentence would then read thus: “ On presenting such petition, such defendant shall deliver an account of his creditors, and an inventory of his estate, similar in all respects to the account and inventory required of a debtor, by the sixth article,” &c. The objects of the act of 1831, and the' subject to which the provisions adopted hy the reference was to be applied, show the propriety of requiring such an inventory as is presented by article sixth, and therefore, the probable correctness of the reference.
 

 It must be borne in mind, that the
 
 sixth
 
 article of chapter fifth of the revised statutes, relates only to cases where persons imprisoned in execution in civil causes, propose to assign their property for the benefit of those creditors by whom they are imprisoned, and thereupon
 
 *114
 
 to be discharged from
 
 such
 
 imprisonment. As the imprisonment did not deprive the debtor of the power to dispose of his property in the payment of his debts, nor impair his obligations to those creditors who had not imprisoned him, nor probably increase his kindness or gratitude toward those who had; and as the discharge to be obtained under the application which he was about to make, only protected him from being again imprisoned, by the same creditors, for the same debts; his feeling and the policy suggested by his situation, certainly had a tendency to induce him, while imprisoned, to make terms with his more lenient creditors, and then to demand his liberty from the others, on tendering the remaining fragments of his property. In such a case, and when imprisonment was acknowledged as- a legal means of obtaining satisfaction of a debt, it was but justice to the party from whom the surrender of such means was demanded, *that the demandant should be required to show the changes, if any, which he had made in his property, during his imprisonment, to real or pretended creditors; and the accounts of the property required by the
 
 sixth
 
 article were adapted • to that purpose.
 

 Now, it is easy to perceive, that the situation of a debtor arrested on a judge’s warrant, under the act of 1831, as respects the feelings, motives and policy excited by his condition, is very similar to that of an imprisoned debtor at the time of enacting the statute contained in the sixth article referred to. He is pursued only by creditors who have obtained judgments or commenced suits against him, and he may have other more forbearing creditors. The proceedings under the warrant, if he cannot pay, or secure, the demand of the pursuing creditor; must result in absolute imprisonment, or a surrender of his property, for the benefit of the creditors who caused him to be arrested; or, perhaps, of those who are in a condition to pursue him by warrant: and for the
 
 *115
 
 surrender of wbicb, he can obtain a discharge, which will only exonerate him from being pursued again, by the same or some other creditor, for the frauds committed, or intended, before such discharge; leaving his unsatisfied creditors to pursue him anew, whenever they can establish any acts of fraud, subsequent to his discharge, and leaving him without property, liable to be harassed by the suspicions of unpaid creditors. He feels that the creditors who have arrested him have done their worst, and is interested in reducing the number of his pursuers, and in every point of view, has the same inducement to dispose'of his property, between the time of his arrest, and the time of applying for an assignment and discharge, as the imprisoned debtor had, between the time of his commitment and the time of his making a similar application; and I have no doubt, that the perception of the similarity, suggested to the legislature the propriety of adopting the form of the inventory required by the sixth article, and that it was deliberately and designedly adopted, on that account, and intended to be applied to the imprisonment under the ^judge’s warrant. There is certainly no great misapplication of legal thought, or legal phraseology, in considering, or speaking of, a person under arrest on a warrant, as imprisoned.
 

 I think, the propriety of this construction may be ^illustrated by this case. Bancker, whose petition and inventory are dated September 20th, 1843, in his account of his estate, says, in substance, he has had no real estate in his possession since 28th February 1843, and that he has, at the time of preparing his account of his estate, no personal estate in his possession. He then shows, that on the 28th February 1843, he made an assignment of large real and personal property to two of his creditors for the payment of his debts. Admitting that assignment to have been fair and valid, still, it was an assignment in trust, which might leave
 
 *116
 
 him a large residuary balance, which would be property, in equity, at least. It does not appear by the iirst papers presented by Bancker to the recorder (which are the only ones I have taken into consideration), when he was arrested by Judge VaNDEEPOel’s warrant, though there is some reason to infer, it was in the fore part of June. He, however, admits, in substance, that he gave a bond to avoid commitment, on the 4th of September; even between that time and the time of preparing his petition and inventory, there was ample room for him to release or dispose of all his residuary interest in the assigned property, and that he did so, is not very strongly negatived, by his simple assertion, on the 20th of September, that he had no real or personal property in his possession.
 

 I have no doubt, that his inventory should_ have conformed to the inventory required by the
 
 sixth article
 
 of title first, chapter five, of the second part of the revised statutes, and that it was void for the want of such conformity, and failed to give the recorder any jurisdiction over the matter attempted to be presented to him. The judgment appealed from, and the decision of the recorder, must therefore be reversed.
 

 Judgment reversed.-
 

 [2]
 

 Andriot’s Case, 2 Daly 28-9