## SPEAR and others vs. WARDELL and others.

The assignee of a debtor's property, under the 16th, 17th, and 18th sections of the non-imprisonment act of April, 1831, takes such property as a trustee for the benefit of all the creditors of the assignor, rateably; and not for the exclusive benefit of the particular creditor who has sued out a warrant against the assignor; or even for the exclusive benefit of the particular class of creditors who were in a situation to sue out a warrant against him.

The act to abolish imprisonment for debt is based upon the principle that equality among creditors is equity, in the case of an insolvent debtor. And the fraudulent debtor, pending the proceedings against him, by one or more creditors, for an actual or intended fraud, is not permitted to assign or dispose of his property, or any part of it, for the purpose, or with a view, to give a preference to other creditors.

But he is entitled to a discharge from imprisonment upon his paying, or securing the payment of the creditors who have proceeded against him; or giving security to retain his property in its then situation, until they have had a reasonable time to exhaust their remedies at law, and to file a creditor's bill to reach his property; or upon his making an assignment of his property to such assignee as may be appointed, for that purpose, by the judge before whom the proceedings are had, for the benefit of *all* the creditors *rateably*.

It is not a fraud upon the act, *it seems*, for the debtor, pending the proceedings against him, to make a general assignment of all his property, with proper inventories showing the particulars thereof, and the names of his creditors, with the amounts due to them respectively, to a proper and responsible assignee, for the benefit of all his creditors rateably; and giving to such assignee the same authority to convert the property into money and to apply it to the payment of his debts, and for the same compensation to which an assignee appointed under the act would be entitled.

But any other disposition of his property would be a fraud upon the act; and would render the assignment void as against the prosecuting creditor. And the debtor who has been guilty of such a fraud ought not to be discharged from imprisonment, upon making a mere formal assignment of his property, after having committed such a fraud upon the rights of the prosecuting creditor.

Creditors by judgment merely cannot file a bill in the court of chancery to set aside an assignment, by the judgment debtor, which is subsequent to the lien of their judgment, upon the assigned property, even though it were intended to defraud them. For if such an assignment embraces real estate upon which the judgment is a lien, it will not prevent the judgment creditor from selling the property under execution upon his judgment, which judgment, upon its face, overreaches the assignment. And as respects personal property, judgment creditors cannot file a bill to set aside an assignment thereof, until an execution has been issued, so as to create a lien.

The cases of *The People* v. *Abell*, (3 *Hill's Rep.* 109,) and *Berthelon* v. *Betts*, (4 *Id.* 577,) commented upon.

*Wood* v. *Bolard and al.* (8 *Paige's Rep.* 556,) explained.

Spear *v.* Wardell.

THIS case came before the chancellor upon an application of H. B. Wardell to dissolve an injunction; and upon a cross-motion, on the part of the complainants, for the appointment of a receiver. The complainants were judgment creditors of Charles & Charles E. Wardell, merchants in New-York, who failed for about $200,000.; which was nearly seven times the amount of the value of all their property and effects. On the 5th of November, 1846, a few days after the recovery of the judgment, the complainants applied to C. & C. E. Wardell, who had bills, notes, and other evidences of debt, belonging to them as co-partners, more than sufficient to pay the judgment of the complainants, and requested them to apply the same, or so much thereof as might be necessary, to the payment of such judgment. The Wardells refused to do so; upon the ground that it would be giving to the complainants a preference over other creditors. But the complainants were told by them that if their creditors, upon being called together, would not consent to discharge them, on receiving a per centage upon their several debts and liabilities according to the estimated value of their property and effects, as recommended by a committee of such creditors, they would then assign all their property in trust to pay their creditors rateably out of the proceeds of the same. The complainants, on the same day, applied to the circuit judge of the first circuit, and obtained a warrant against C. & C. E. Wardell, under the second subdivision of the 4th section of the act of April, 1831, to abolish imprisonment for debt and to punish fraudulent debtors; upon the ground that they had rights in action, or interests in stocks, moneys, and evidences of debt, which they unjustly refused to apply to the payment of the judgment of the complainants. Upon the return of the warrant, the proceedings were adjourned from time to time until the 28th of November, 1846; when the circuit judge decided that the allegations of the complainants, upon which the warrant had been granted, were substantiated by them, and that C. & C. E. Wardell must be committed, in pursuance of the directions of the act of April, 1831. On the 21st of November, 1846, after their arrest, and while the proceedings upon the warrant

Spear *v.* Wardell.

were pending before the circuit judge, the defendants' C. & C. E. Wardell, made a general assignment of all their copartnership property and effects to the defendant Henry B. Wardell, in trust to pay all the creditors of the firm rateably; and on the same day, C. Wardell also assigned to Henry B. all his individual property and effects, in trust to pay the individual creditors of the assignor rateably, and to apply the surplus, if any, to the payment of all the copartnership creditors in the same manner. After the decision of the circuit judge that C. & C. E. Wardell must be committed, they presented to him an inventory of their estate as it then existed, and an account of their creditors, and asked that their property might be assigned as directed by said act. And upon a hearing of the parties, the circuit judge decided that the complainants had failed to satisfy him that the proceedings of the petitioners were not just and fair, or that such petitioners, or either of them, had concealed, removed or disposed of his or their property, with intent to defraud his or their creditors; notwithstanding such assignments to the defendant H. B. Wardell for the benefit of all their creditors rateably pending the proceedings upon the warrant. He therefore directed an assignment to S. P. Nash, in pursuance of the provisions of the act. And such assignment having been made and certified, as by the act is required, the circuit judge granted a discharge according to the directions of the 17th section of the act. The complainants thereupon, without having taken out any execution upon their judgment, filed their bill in this cause against C. & C. E. Wardell, and against H. B. Wardell, their voluntary assignee in the assignments of the 21st of November, 1846, to reach the assigned property in the hands of the latter, and to have it applied to the payment of their debt.

*S. P. Nash,* for the complainants.

*H. F. Clark,* for the defendants.

THE CHANCELLOR. The question does not appear to be presented in this case, whether the assignment made under and

in pursuance of the 16th and 17th sections of the act to abolish imprisonment for debt and to punish fraudulent debtors, creates a trust for the exclusive benefit of the particular creditors upon whose application the warrant against the debtor has been issued. But as the whole claim of the complainants is based upon the supposition that after they had taken out a warrant, if they should succeed in obtaining an order for commitment, their judgment debtors must pay or secure the debt due to the plaintiffs in such proceeding, or make an assignment for their exclusive benefit, or at least an assignment which would give them a preference, it may be necessary to examine the provisions of the act of 1831 in reference to this question.

In the case of *The People* v. *Abell*, (3 *Hill's Rep.* 109,) Mr. Justice Bronson intimated an opinion that the discharge of the debtor under the 17th section of the act of 1831, only exonerated him from being proceeded against, for fraud, by those creditors who had previously commenced suits; and that only those who were entitled to apply for a warrant were entitled to dividends of the assigned property. But as that question was not involved in the case, he said it needed not be settled at that time. The various provisions of the act of 1831, and of the title of the revised statutes referred to therein, do not appear to have been examined by him. This intimation of his opinion, therefore, is not entitled to the ordinary weight of an *obiter dictum* of that distinguished judge; although, if right, it is still in conflict with the claim of exclusive priority set up by the complainants in this case.

In *Berthelon* v. *Betts*, (4 *Hill's Rep.* 577,) which came before the late Justice Cowen, six or seven months afterwards, the question as to the class of creditors for whose benefit the assignment was made, was not presented to his consideration; although it would probably have been involved in the application, if the assignee under the act of 1831 had thought proper to appear and oppose the application upon the ground that other creditors had presented claims to him against the fund in his hands. The only questions considered by the judge in that case, therefore, were whether the act of 1831 was an insolvent

Spear *v.* Wardell.

act which was abrogated or suspended by the general bankrupt law; and whether a subsequent decree in bankruptcy overreached an assignment previously made, under the first mentioned act. Both of these questions he decided against the assignee in bankruptcy; who claimed that the previous assignment under the act of 1831 was void as against the subsequent decree in bankruptcy, upon the ground that the petition in bankruptcy had been presented, under the voluntary provisions of the bankrupt law, a few days previous to the coerced assignment of the debtor under the act of April, 1831. The right of priority claimed by the complainants is therefore wholly unaffected by any of the judicial decisions cited by their counsel upon the argument. For in relation to the case of *Wood* v. *Bolard & Pickard,* (8 *Paige's Rep.* 556,) it was an ordinary creditor's bill, founded upon the return of an execution unsatisfied. And all that this court meant to decide in that case, was that an assignment made for the purpose of defrauding the complainants in the proceedings which they had instituted under the act of April, 1831, could not be set up, by the fraudulent assignee, to protect the property against the creditor's bill, filed by the defrauded parties to reach such property in this court. But there is no intimation in that case that the complainants, by the institution of the proceedings under the act of 1831, obtained any right of priority over other creditors, of their judgment debtor, who had equal claims to be paid out of his property. The decision was based entirely upon the principle that the act had deprived a fraudulent debtor, who was proceeded against, under the provisions of that act, for the fraud which he had already committed, or was about to commit, of the right or power to make an assignment giving to other creditors a preference over those who had already instituted proceedings against him.

There are three distinct cases in which an assignment of the debtor's property may be obtained under the provisions of the act of 1831. *First,* where the debtor has been proceeded against adversely, by one or more of his creditors: *Second,* when he has been sued for a debt for which he is not liable to be arrested, or imprisoned, except by proceedings under that act,

Spear *v.* Wardell.

and where no such proceedings have been instituted against him ; and *Third,* where he has been indicted and convicted of a misdemeanor for fraudulently removing, secreting, or otherwise disposing of any of his property, for the purpose of defrauding his creditors. In the two first cases, the assignment can only be obtained upon the voluntary application of the debtor for leave to make such assignment. But in the last case, the assignment of his property is obtained upon an adverse proceeding against him, by his creditors, as in the case of debtors imprisoned in the state prisons, or in county jails or penitentiaries, upon convictions for crimes. (*Laws of* 1831, *p.* 402, § 27. 2 *R. S.* 14, § 1.) In the two first cases, the proceedings on the part of the debtor are precisely the same ; except that where he applies immediately, after the judge has decided that he is liable to commitment for the fraud of which he has been guilty no notice of his application need be given to other creditors. But the form of the inventory and the effect of the assignment is the same in both cases. As to the form of the inventory, the person who drew the act of April, 1831, probably by inadvertence, substituted the sixth for the fifth article of the title of the revised statutes relative to the assignment of the estates of non-resident, absconding, insolvent, or imprisoned debtors. For the 13th section of the act of 1831 provides that the debtor, upon presenting his petition, shall deliver an account of his *creditors,* and an inventory of his estate, similar in all respects to the account and inventory required of the debtor by the *sixth* article of title first and chapter five of the second part of the revised statutes. But by referring to the sixth article, which relates to the discharge of a debtor who is imprisoned upon an execution for debt, it will be seen that no account of his *creditors* is required to be annexed to his petition. That article of the revised statutes requires an account and inventory of the debtor's property and effects, not only as they exist at the time of preparing his petition, but also as they existed at the time of his imprisonment ; which last provision is wholly inapplicable to the case of a debtor who has never been imprisoned, either because no warrant had been taken out against him, or because he applied

immediately upon the decision of the judge against him, or because he had given a bond to apply for an assignment, as authorized by the 4th subdivision of the 10th section of the act. Or, the person who drew this 13th section of the act of 1831 may have intended to adapt it to the case of an actual commitment of the debtor, and a subsequent petition by him for leave to make an assignment of his property for the purpose of obtaining a discharge from such imprisonment; in order to obtain a statement of his property as it existed when he was originally committed, as well as at the time of his discharge; without seeing that this thirteenth section, as drawn, would not meet the different cases intended to be provided for. But, whatever may have been the intention of the framer of this section, as to the form of the inventory, I do not see that it has any practical bearing upon the question as to who is to take the beneficial interest in the assigned property under the assignment provided for in the 16th section. The sixth article of the title of the revised statutes, referred to in the 13th section of the act of 1831, vests the assigned property in the assignee for the benefit of the creditors by whom the assignor was imprisoned, and for their benefit only. (2 *R. S.* 32, § 9. *Idem,* 47, § 33, *sub.* 4.) And the surplus, if any, is to be paid to the assignor or his legal representatives. (*Idem,* 48, § 43.) But the 16th section of the act of 1831 does not refer to this sixth article of the revised statutes, to determine the effect of an assignment made under the provisions of that section. It refers to the *fifth* article. The assignment provided for under that fifth article is a general assignment, which vests in the assignee all the interest which the assignor had, at the time of executing the same, in any estate or property, real or personal, at law or in equity, and any contingent interest which may become vested in the assignor within three years thereafter. (2 *R. S.* 30, § 9. *Idem,* 21, § 28.) And a subsequent provision of the revised statutes directs the assignees, in whom the property is vested under this *fifth* article, to distribute the proceeds thereof rateably among those who were creditors of the assignor at the time of the execution of the assignment by him. (*Idem,* 47, § 33, *sub.* 2.)

The 17th section of the act of 1831, if taken by itself, would seem to favor the construction which Mr. Justice Bronson was inclined to put upon it, in the case of *The People* v. *Abell*, before referred to; so as to confine the dividends to be made by the assignee, to a class of creditors who, at the time of the making of the assignment, were in a situation to apply for a warrant against the assignor, for some fraud which he had then committed or was about to commit. But that section refers to subsequent provisions of the act for the class of creditors who are entitled to dividends under the assignment; and no provision for dividends is made in that section. Nor is there any thing in the subsequent parts of the act providing for the making of dividends, by the assignee, except in the next section; which section refers to the eighth article of the title of the revised statutes before mentioned, (2 *R. S.* 40,) for the powers and duties of the assignee, and the making of dividends. We must, therefore, look to the provisions of that article of the revised statutes, in connection with the fifth, for the purpose of seeing for whose benefit the assigned property is vested in the assignee, and who are entitled to dividends of the proceeds thereof, under an assignment made by the debtor himself, according to the directions of the 17th section of the act of April, 1831. The first section of that eighth article declares that the assignees appointed under any of the preceding articles of that title, in the several cases therein contemplated shall be trustees of the debtor, for the benefit of his creditors; without specifying any class. And that such trustees shall be vested with the powers and authority, and shall be subject to the control, *obligations*, and responsibilities thereinafter declared in respect to trustees. And the 6th section merely specifies the time to which the assignment under the provisions of the different articles shall relate.

The only section of that article which directs the trustees as to the class of creditors among whom the proceeds of the assigned property shall be distributed is the thirty-third. (2 *R. S.* 47.) That section directs different modes of distribution in the case of proceedings under the different articles of that title. So that we must still refer to the 16th section of the act of 1831

for the purpose of ascertaining to which of the five articles of the revised statutes the assignment made by the debtor, under that act, assimilates itself. That section declares that the assignment shall be executed with the like effect as is declared in the fifth article of the revised statutes. And the actual effect of an assignment under the provisions of the fifth article, is to vest the property of the debtor in the assignee, for the benefit of all who were his creditors at the time of the execution of the assignment, in proportion to the amount of their respective demands ; without giving a preference to any, except such as have obtained liens upon the assigned property, or those who are entitled to priority under the laws of the United States. (2 *R. S.* 42, § 7, *sub.* 7. *Idem,* 46, §§ 32, 33.) No other sensible construction, therefore, can be given to the imperfect provisions of the 16th, 17th and 18th sections of the act of April, 1831, than to hold that the assignee takes the property of the debtor as a trustee for the benefit of all the creditors of the assignor rateably ; and not for the benefit of the particular creditor who has sued out a warrant against the assignor ; nor even for the particular class of creditors who were in a situation to sue out warrants against him. In other words, the act appears to be based upon the principle that equality among creditors, in the case of an insolvent debtor, is equity. The fraudulent debtor, therefore, pending the proceedings against him by one or more creditors, for an actual or intended fraud, is not permitted to assign or dispose of his property, or any part of it, for the purpose or with a view to give a preference to other creditors. But he is to be discharged from imprisonment upon paying, or securing the payment of the creditors who have proceeded against him ; or retaining his property in its then situation until they shall have had a reasonable time to exhaust their remedies at law and file a creditor's bill to reach his property, or upon making an assignment of his property to such assignee as may be appointed for that purpose, by the judge before whom the proceedings are had, for the benefit of all his creditors rateably.

I am also inclined to think it is not a fraud upon the act, for the debtor, pending the proceedings against him, to make a

general assignment of all his property, with proper inventories showing the particulars of his property, and the names of his creditors with the amount due to them respectively, to a proper and responsible assignee for the benefit of all his creditors rateably, giving to such assignee the same authority to convert the property into money, and apply it to the payment of his debts, and for the same compensation, which an assignee appointed under the act would be entitled to. But any other disposition of his property would be a fraud upon the act; and would render the assignment void as against the prosecuting creditors. And the debtor who has been guilty of such a fraud, ought not to be discharged from imprisonment upon making a mere formal assignment of his property, after having committed such a fraud upon the rights of the prosecuting creditor.

In the case under consideration, the judge was probably right in granting the warrant in the first instance. For the debtors had no right to insist upon waiting until they could endeavor to persuade their creditors to discharge them from their debts, before they would consent to make a general assignment for the benefit of all their creditors rateably, or give to these complainants, upon their demand of the same, a rateable proportion of the property of the insolvent firm.

But I do not see that there is any thing in the bill of the complainants to show that the assignment made by the defendants C. & C. E. Wardell, pending the proceedings against them, was not perfectly just and equitable, in reference to the rights of all their creditors to an equal participation in the proceeds of the assigned fund. Nor is there any thing to show that the assignee was not a perfectly responsible and proper person to be entrusted with the winding up of this insolvent concern, and the distribution of the fund among all the creditors of the assignors, according to their equitable rights as such creditors. If the complainants, therefore, had issued an execution and had it returned unsatisfied before they commenced this suit, I do not think they would have been entitled to set this assignment aside, upon the ground of fraud; even if their bill had been filed before the subsequent assignment to the trustee

Taylor v. Bruen.

,appointed under the act. It is not necessary, however, to decide that question here; for, as creditors by judgment merely, the complainants were not in a situation to file a bill to set aside an assignment by the judgment debtors, even if it was in fact fraudulent as against them. If the assignment embraced any real estate upon which their judgment was a lien, it did not prevent them from selling the property under execution upon their judgment; which judgment upon its face overreached the assignment. And as respects the personal property liable to execution, the complainants were not in a situation to file a bill until they had sued out an execution. (*Beck* v. *Burdett*, 1 *Paige's Rep.* 305.) And if the property passed to the subsequent assignee, under the assignment made by order of the circuit judge, in consequence of any fraud in the previous assignment, such subsequent assignee, who represented the rights of all the creditors for whose benefit the last assignment was made, was the only person who had a right to file a bill to set aside the previous assignment upon the ground that it was fraudulent as against the creditors of the assignor.

For these reasons the injunction in this case was improperly allowed, and it must be dissolved. And the motion on the part of the complainants for the appointment of a receiver must be denied with costs.