## HALL and others *vs.* KELLOGG and others.

It was not the intention of the non-imprisonment act to give to the creditor upon whose complaint a debtor is arrested, under its provisions, the benefit of the assignment which the debtor may elect to make, to the exclusion of all other creditors of the same degree.

The legislature, having abolished the remedy by arrest and imprisonment, as to a certain class of creditors, intended the new remedy as a substitute; and in case it resulted in an assignment, that all the creditors whose right to arrest and imprison had been abolished, and who had instituted a suit or recovered a judgment or decree should share in the distribution of the debtor's property. MULLETT, J. dissented.

Consequently a judgment creditor, who makes a demand upon his debtor, to apply rights in action to the payment of his debt, and upon the debtor's refusal applies for and obtains a warrant to arrest him, before other judgment creditors have taken similar steps, does not thereby acquire a right to have his whole debt first paid. But the debtor's property in the hands of the assignee is to be distributed among all the creditors who have instituted a suit or recovered a judgment or decree, *pro rata.* MULLETT, J. dissented.

*Spear* v. *Wardell*, (1 *Comst.* 144,) commented upon, and distinguished from this case.

THE plaintiffs, and all the defendants except McKnight and Babcock, were the creditors of the defendant McKnight. Some of the defendants were individual creditors, and others composed firms. The plaintiffs, on the 17th of January, 1848, recovered, in this court, a judgment upon a bond, by confession. The bond and the warrant to confess judgment, had been given by Mc-Knight some time previous, upon condition that no judgment should be entered until the 17th of January. Immediately after filing the record and docketing the judgment, the plaintiffs, by their attorney, made a demand upon McKnight to apply any notes, accounts, &c. &c. belonging to him, in payment of the judgment. McKnight refused to comply with this demand, and the plaintiffs the same day applied for, and obtained, from a justice of this court, a warrant, under the non-imprisonment act, (*Laws of* 1831, *p.* 396,) to arrest him. McKnight had also given his bond to Kellogg & Co. accompanied by a warrant of attorney to confess judgment, upon condition or stipulation that judgment should not be entered until the 17th of January, and on that day

they docketed judgment against McKnight, but after the demand had been made by the plaintiffs upon him. Immediately after this demand McKnight secreted himself, and through his attorney informed his other creditors that a demand had been made by the plaintiffs, and thereupon the creditors, who are defendants in this action, respectively procured from him confessions of judgment, and caused them to be properly entered, and then made similar demands in writing. McKnight refused to comply with these demands, but expressed a willingness and desire that his property should be applied *pro rata* among all his creditors. The creditors who had thus obtained judgments and made demands, applied respectively to the same judge, for warrants against McKnight, and they were issued as applied for, to the sheriff of Erie county. After all the warrants were issued, McKnight appeared publicly, and the sheriff arrested him upon all the warrants and took him before the judge, when McKnight presented his affidavit, in the case of the warrant issued upon the complaint of the plaintiffs, and controverted, and on information and belief denied, that he ever unjustly refused to apply any notes, &c. to the payment of the judgment of the plaintiffs. No answer was made to the complaints or proceedings of the other creditors, but there was an understanding that the evidence upon the issue made should be applicable to the other cases respectively. The judge, after hearing the proofs and allegations, decided that the allegations of the plaintiffs were substantiated, and that McKnight had rights in action which he unjustly refused to apply to the payment of the plaintiffs' judgment, and he made and signed a commitment, in the usual form to commit McKnight to the jail of the county. He also made and signed a commitment in the case of Day O. Kellogg & Co. and also in the case of Green & Cramer. No warrant of commitment was delivered to the sheriff. After the decision to commit him, and the three warrants for that purpose had been made and signed, McKnight elected to make an assignment under the 11th section of the act of 1831; when the plaintiffs claimed that they were entitled to a preference or priority in the distribution of the assignee's property. The judge declined at that time to decide

Hall *v.* Kellogg.

that question, and directed an assignment to be made to George R. Babcock, reciting in their order the proceedings taken by the several creditors. McKnight made the assignment. In the assignment the proceedings of the respective creditors before the judge were recited, and the order of the judge directing Mc-Knight to make an assignment of his property pursuant to the act, to George R. Babcock; then followed the conveyance and grant and assignment of his property in pursuance of the act, and of the proceedings, "to be disposed of and collected by the said assignee and accounted for according to law."

The plaintiffs brought this action for the purpose of establishing the rights of the creditors to the funds in the hands of the assignee, there not being enough to pay all the creditors. They claimed a priority, and the judgment of the court at special term gave the plaintiffs a priority, and directed the order in which the other creditors should be paid. It was a decision against a *pro rata* distribution of the funds. From this judgment several of the defendants appealed to the general term. The situation of the parties, and other facts, are sufficiently noticed in the opinion.

*John L. Talcott,* for the plaintiffs.

*Ch. H. S. Williams,* for Kellogg & Co. and Green & Cramer.

*Wm. H. Green,* for the defendants Kinnan, Card and Phillips.

*I. T. Williams,* for J. L. Provost.

*J. M. Smith,* for Asa Wilcox.

MARVIN, J. The plaintiffs claim that by their superior diligence in making a demand of their debtor McKnight, and obtaining a warrant to arrest him, they have acquired a right to priority in the payment of their debt, over all the other creditors of McKnight. The question is important, and its determination must depend upon the construction to be given to the non-imprisonment act

The first section of the act prohibits the arrest or imprisonment of any person upon any demand founded on contract. The second section makes some exceptions ; then follow sections three to nine inclusive, providing a new or substituted remedy in certain cases. A plaintiff who has commenced a suit, or obtained a judgment or decree against the defendant, in any court of record, may apply to officers named, for a warrant to arrest the defendant in such suit. He is to adduce to the officer satisfactory evidence that there is a debt or demand due to him from the defendant, amounting to more than $50, for which, by the provisions of the act, the defendant cannot be arrested or imprisoned, and he must establish one or more of certain particulars specified in the act. The officer is then to issue his warrant "in behalf of the people of this state," commanding the officer to arrest the person named in the warrant, &c. The person so arrested may, before the officer, controvert any of the facts and circumstances upon which the warrant issued, and may verify his allegations by his own affidavit. If he does so, the *complainant* may examine such *defendant* on oath. The officer is to receive such other proof as the parties may offer. He may adjourn the hearing. He may issue subpœnas and compel the attendance of witnesses. If the officer is satisfied that the allegations of the *complainant* are substantiated, and that the *defendant* has done, or is about to do, any one of the acts specified in the fourth section of the act, he shall, by a commitment under his hand, direct that such defendant be committed to the jail of the county to be there detained until he shall be discharged according to law, and such defendant shall be committed and detained accordingly. The tenth section provides that such commitment shall not be granted if the defendant shall do either of certain things specified, to which I shall soon advert.

It is insisted that the proceedings before the officer are exclusively for the benefit of the creditor upon whose complaint the debtor was arrested, and that in no event can the other creditors have any interest in or be in any wise benefited by these proceedings. It will be noticed, on reading the provisions of the act above referred to, that the *plaintiff* and *defendant*, the *com-*

Hall *v.* Kellogg.

*plainant* and the *person arrested,* are named, and there is no language in the act *thus far,* indicating that any other persons or creditors are interested in the prosecution before the officer: but with section 10, the act, I think, begins to speak a different language; and in my opinion it is very important to notice this change, as the proper construction of the statute depends upon it. The judge, upon the inquiry before him, having determined that the allegations of the complaint are substantiated, and having directed the commitment of the defendant, the 10th and following sections of the act provide certain modes of averting the commitment, to be adopted by the defendant. He has the right, by the statute, to become an *actor.* He may, if he chooses, remain passive, and he will then be committed to jail, but the prosecuting creditor will have acquired no interest in, or lien upon his property by the proceedings. He will simply have procured his imprisonment. The debtor may avert the imprisonment by doing one of several things. Here then he has an *election.* He may 1, pay the debt or demand claimed, with the costs, &c. ; or 2, he may give security, that the debt or demand. of the plaintiff, &c. shall be paid within sixty days; or 3, he may "make and deliver to such officer an inventory of his estate and an *account of his creditors,* and execute an assignment of his property, as hereinafter provided, upon which the same proceedings shall be had as upon a petition of such defendant in the manner hereinafter directed, except that no notice to the *plaintiff* shall be requisite, and no adjournment shall be granted for more than three days, except at the instance of the defendant, and a discharge shall be granted in the like cases and with the same effect." 4. He may enter into a bond to the complainant, with sureties, conditioned that he will within thirty days apply for an assignment of his property and for a discharge, as provided in the subsequent sections of the act, &c. &c. It is not necessary to notice the 5th subdivision as amended. If the debtor *elects* to pay the debt, or give security for the payment in sixty days, the proceedings upon the warrant will have enured exclusively for the benefit of the creditor upon whose complaint he was arrested. The debtor may be entirely solvent and able

to pay the debt at once, and if he does so then the proceedings are at an end. Or he may be solvent and able to give security to pay in sixty days. If he gives such security, then he is discharged and the proceedings are ended. Again, if he gives the bond mentioned in the 4th subdivision and shall fail to perform the condition, then the creditor upon whose complaint he was arrested may sue upon the bond. No *other creditor* can maintain suit upon it, and in this event the proceedings upon the warrant will have resulted exclusively for his benefit. No discharge under the act will, however, have been granted to the debtor in either of these cases. But suppose the debtor finds himself insolvent, and desires that his property shall be applied to the payment of his debts, and that he may be discharged, and protected from further molestation on account of any of the acts or frauds specified in the 4th section. He may, as we have seen, by the 3d subdivision of section 10, " execute an assignment." In the present case McKnight elected to make this assignment, and the question is, who are to partake the fruits of it? Are the plaintiffs to be paid their entire debt to the exclusion of the other creditors, or have the other creditors a right to share in the distribution ; and if so, what creditors ?

Having come to the conclusion, after much and careful examination of the statute, that it was never intended to give to the creditor, upon whose complaint the debtor is arrested, the benefit of the *assignment*, which the debtor may *elect* to make, to the exclusion of all other creditors, I shall proceed to examine, as briefly as may be, the provisions of that statute ; a statute, it must be confessed, very defective and obscure. It is important to keep in mind the object of the legislature in enacting the law. It was to abolish arrest or imprisonment for debt, except in a few cases specified. It was apprehended, if the creditor was deprived of the remedy by imprisonment, to coerce the payment of debts, that fraudulent debtors might set their creditors at defiance. The legislature, therefore, provided the new substituted remedy of arrest upon a warrant, and the proceedings before an officer, to be resorted to when the creditor could establish any one or more of certain particulars specified, and which

Hall *v.* Kellogg.

are referred to in section 17, *as frauds.* Upon establishing any one or more of those particulars, the creditor may procure the arrest of the debtor, and this may result in imprisonment. But the creditor has not acquired any lien upon the debtor's property. He is no nearer the realizing of his debt, than he would have been under the old system of imprisonment upon a *capias ad satisfaciendum,* unless the debtor himself chooses to act.

Several particulars are to be noticed in subdivision three, section ten. The debtor may deliver to the officer an inventory of his estate, and an *account of his creditors.* Here is the first reference in the act to any *creditors* other than the creditor upon whose application the warrant issued. And here is the first intimation of any right in the debtor to make an assignment. If the assignment is to be exclusively for the benefit of the pursuing creditor, why require an *account of his creditors?* For the manner of making the assignment, and for the discharge and its effects, we are referred to subsequent provisions of the act. By section 11, if the defendant has been committed, he is to remain in custody until a final judgment shall have been rendered in his favor, in the suit prosecuted by the creditor, at whose instance he has been committed; or until he shall have assigned his property and obtained his discharge. He may, however, be discharged from imprisonment on paying the debt or demand claimed, or by giving security for the payment thereof, or by giving bond conditioned to apply for an assignment of his property, &c. His *right of election,* continues after the commitment.

By the 12th section, any person committed, or who has given the bond conditioned that he will apply for an assignment of his property and for a discharge, &c. or *against whom any suit shall have been commenced in a court of record, in which such person cannot by the act be arrested or imprisoned,* may present a petition to an officer named, praying that his property may be assigned, and that he may have the benefit of the provisions of the act. It will be seen from this section that the right of the debtor to present his petition exists whenever a suit is commenced against him upon a demand belonging to the class

for which, by the act, he could not be arrested. In such a case who would be entitled to the proceeds of the assignment? No creditor has caused his arrest upon a warrant. No one, then, has acquired a priority by proceedings upon warrant before the judge. A suit simply has been commenced. Will it be maintained that the creditor instituting the suit simply, has acquired a right of priority over other creditors? · I am not aware that such a construction of the statute has been claimed. Suppose several suits have been instituted, and the debtor then presents his petition, no warrant having issued against him, is the creditor whose suit was first instituted entitled to a priority? But let us examine further the provisions of the statute.

By the 13th section, " On presenting such petition, such defendant shall deliver an account *of his creditors*, and an inventory of his estate, similar in all respects to the account and inventory required of a debtor by the *sixth* article of title first and chapter five of the second part of the revised statutes, and shall annex to the said petition, *account* and *inventory*, an affidavit," &c. By section 14, fourteen days' notice of the time and place, at which, and of the officer to whom such petition will be presented, together with a copy of such petition and the account and inventory thereto annexed, shall be served personally on the *plaintiffs* by whom such defendant shall be *prosecuted,* their personal representatives or attorney. By section 15, " *Any creditor may oppose such application,* and may examine the petitioner, his wife, or any other witness," &c. *Any creditor* is entitled to process to compel the attendance of witnesses. Section 16, authorizes the officer, upon cause shown by the petitioner, or *any creditor,* to adjourn the hearing. He is authorized to order an assignment. By section 17, the officer is authorized to appoint one or more assignees, to whom the petitioner is to assign all his estate, and the officer is directed to grant to the petitioner a *discharge,* " which shall exonerate him from being proceeded against by *any creditor entitled to a dividend of the estate of such petitioner,* as hereinafter provided, under the 3d, 4th, 5th, 6th, 7th, 8th and 9th sections of this act, for any fraud committed or intended before such discharge."

Hall *v.* Kellogg.

The 18th section declares that the assignees shall be vested with all the rights and powers over the property assigned, which are specified in the eighth article of the first title of chapter five of the second part of the revised statutes, and shall be subject to the same duties, obligation and control in all respects, *and shall make dividends ;* and vacancies in their number shall be supplied as therein directed.

I have thus referred to all the provisions of the statute, bearing upon the question. It has been seen that down to the time when the judge shall be satisfied that the allegations of the complaint are substantiated, (§ 9,) the only parties to the proceeding are the plaintiff and the defendant. No other creditor has a right to interfere. The prosecuting creditor may undoubtedly abandon the proceedings. The debtor, or defendant, may, after the judge has decided to commit, avoid the committal by paying the particular debt, or by giving a bond with sureties to pay, or certain other bonds; or he may elect to assign his property, and apply for a discharge. But it has been seen that when he makes this election, and in all the proceedings in sections 10 to 18, inclusive, relating to the assignment of his property, *other creditors* are referred to. The language is changed. The debtor becomes himself an actor. And other creditors become interested. The proceedings are no longer for the benefit of the creditor upon whose complaint the debtor was arrested. The debtor, having adopted measures to obtain a discharge, which is to exonerate him from being proceeded against, under sections three to nine, inclusive, for any fraud committed or intended, by any creditor entitled to a dividend of his estate; those creditors have a right to be heard in all these proceedings. This is all inconsistent with the position that the proceedings are for the exclusive benefit of the creditor procuring the warrant. Besides, the statute declares that the assignees " *shall make dividends.*" This language would hardly have been used if the creditor instituting the proceedings was to be entitled to the whole of the proceeds of the property assigned, or to the whole amount of his debt, before other creditors could participate. The statute is very obscure and defective; still I think

the intention of the legislature is sufficiently obvious that there should be a *distribution* among creditors. But what creditors, is not so clear. We shall, I think, derive some aid in ascertaining the intention of the legislature, and in arriving at a correct construction of the statute, by consulting our insolvent laws as they existed at the time this law was enacted; particularly those to which reference is made in the act.

The sixth article of chapter fifth, part second of the revised statutes, to which reference is made in the 13th section of the non-imprisonment act, is entitled "of voluntary assignments by a debtor imprisoned in execution in civil causes." The imprisoned debtor may petition the court for his discharge from imprisonment. Fourteen days' notice of the time and place at which the petition will be presented, with a copy of the petition and an account of his estate, is to be personally served by such debtor, on the creditors at whose suit he shall be imprisoned, their personal representatives or their attorney. Section 14 of the non-imprisonment act, was evidently taken from this section. The petition is to set forth the cause of the imprisonment of the applicant, and to have annexed to it a just and true account of all his estate real and personal, &c. It is not necessary to notice the proceedings. They are conducted before the court. Creditors may oppose the application. The court may appoint assignees, order an assignment, and a discharge of the applicant from imprisonment, by virtue of any execution which shall have been specified in his petition. The assignees are to proceed to collect, sell and distribute the proceeds of the property assigned to them. They are to distribute the net produce of the property that shall come to their hands, among the creditors who charged such applicant in execution, previous to the exhibition of his petition, in proportion to the amounts due on their respective executions. (*See* § 15.)

The chancellor, in *Spear* v. *Wardell*, (2 *Barb. Ch. Rep.* 291) expressed the opinion that there was an error in the non-imprisonment act, in referring to the 6th instead of the 5th article of the revised statutes. The 5th article authorizes an insolvent debtor to present a petition to certain officers, praying that his

Hall *v.* Kellogg.

estate may be assigned for the benefit of all his creditors, and that his person may be thereafter exempted from arrest or imprisonment by reason of any debts arising upon contract previously made, and if in prison that he may be discharged from imprisonment. The debtor may institute the proceedings under the 5th article before he has been arrested or imprisoned, and the assignment, when made in that case, is for the benefit of all his creditors, and the discharge will protect him from imprisonment at the suit of any of his creditors. Under the 6th article he cannot petition unless he is a debtor *imprisoned in execution,* and the creditors, at whose suits he is charged in execution, are entitled to the benefit of all the property assigned. Their debts are not affected by the discharge, but their right to imprison is gone. Other creditors, however, who have not charged him in execution, and who do not participate in the distribution of his property, are not affected by the discharge. Their right to arrest and imprison remained.

It has been noticed that the non-imprisonment act has not deprived all persons having actions founded upon contract, of the right to arrest and imprison the defendant or debtor. Certain cases are excepted by the second section. Now these cases are not affected by the act. The new remedial provisions of the act are exclusively for the benefit of those creditors whose right to arrest and imprison is abrogated. And these new remedies can only be resorted to when the debtor has exposed himself to them under the provisions of the fourth section. In my opinion those persons whose right to arrest and imprison, has not been abolished by the act, cannot participate in the distribution. I think the reference to the 6th article is not an error. The provisions in the act relating to an assignment assimilate very closely with the provisions of the 6th article. It seems to me clear from the act that there is to be a *distribution* of some kind, *dividends* are to be made. In section 18 reference is made to the 8th article. The assignees are to be vested with all the rights and powers over the property assigned, which are specified in the 8th article, and they are subject to the same duties, obligation and control, and shall make *dividends ;* and

vacancies in their number shall be supplied as therein directed. It is clear from this that dividends are to be made. But the manner of making them, and to whom, are not declared. If this provision may be read as referring to the 8th article for the manner of making the dividends, still the question cannot be clearly settled by a reference to such article. That article is entitled "of the powers, duties and obligations of trustees and assignees under this *title.*" It contains more recent provisions relating to the powers and duties of the assignees under all the articles in that title. It establishes the rule of distribution for each article. (§ 33.) In cases of attachment against absent, &c. debtors, under the first article, the distribution is to be made among those who were creditors at the time of issuing the first warrant of attachment; under the third and fifth articles among those who were creditors at the time of the execution of the assignment. Under the fourth article the distribution is general among those who were creditors at a certain time. Then follows the direction in proceedings under the 6th article. The distribution is to be "among those creditors at whose suit the debtor was imprisoned on execution at the time of his *discharge.*" There is a slight discrepancy between the rule as here laid down, and as stated in article six. There the distribution is to be to those creditors who had charged the applicant in execution previous to the *exhibition of his petition.* This discrepancy is not material to our present inquiry. Both rules show that the distribution is to be confined to those creditors at whose suits the debtor was imprisoned. In my opinion, then, the legislature having abolished the remedy by arrest and imprisonment, of a certain class of creditors, intended the new remedy as a substitute, and in case it resulted in an assignment, that all the creditors, whose right to arrest and imprison had been abolished, and who had instituted a suit, or recovered a judgment or decree, should share in the distribution of the debtor's property. But for the peculiar language in the 14th section, requiring notice to be served personally on the *plaintiffs by whom such defendant shall be prosecuted,* I should be inclined to the opinion that all the creditors, whose right to arrest and imprison is abol-

Hall v. Kellogg.

ished, should participate in the dividends, whether they had commenced suits or not. It is not necessary, in this case, to express an opinion upon this question. All the creditors who are parties to this suit, had recovered judgments before Mc-Knight elected to make the assignment. As I have already said, it is clear to my mind, that there may be creditors other than the creditor who sued out the warrant, who may be entitled to dividends. They may appear before the officer and participate in the proceedings for an assignment and discharge, and the discharge is to exonerate the debtor from being proceeded against by any creditor entitled to a dividend; under sections three to nine, inclusive, for any fraud committed or intended before the discharge. (§ 18.) Now no creditor, unless he has a debt or demand due, for which the defendant cannot be arrested or imprisoned, can ever proceed against his debtor under sections three to nine. Such creditor then cannot be affected by the discharge, and there was no necessity of declaring the effect of the discharge as to him. The discharge only exonerates the debtor from being proceeded against by warrant under sections three to nine, and the creditors who are " entitled to a dividend" are barred of this remedy by the discharge. This shows, as I think, that those creditors and persons, whose old remedy is saved by section two, have no interest in these proceedings. And that those creditors, whose ancient remedy has been abolished, have an interest. They are to be barred by the discharge of the new remedies given by the act. It seems to me that it cannot be successfully contended that the creditor, at whose instance the debtor was arrested and brought before the officer, shall be permitted, when the proceedings result in an assignment, to take the whole avails of the assignment, to the exclusion of other creditors, and yet that those creditors shall be barred of their remedies under the act. This would be unjust. It may be said that their remedies are not affected, as they are not entitled to a dividend of the estate of such petitioner. If this be so, then the debtor will be left exposed to new prosecutions and arrests, at the instance of each and every creditor of the class entitled to the new remedies. He will be compelled, every time he is arrested upon a warrant,

to repeat the proceedings to avert a commitment, and to obtain a discharge from such arrest. This cannot have been the intention of the legislature, nor do I so understand the statute. There may be creditors who are entitled to a dividend, and against them the discharge is to operate. The assignees shall make dividends. The provisions in relation to an application for an assignment and the discharge, are closely assimilated to the provisions in the sixth article of the revised statutes referred to, and as the object of the act was to abolish imprisonment for debt, substituted remedies were given when the debtor had been guilty of any of the acts specified in the fourth section. Those acts affected this class of creditors only, and if the debtor desires to relieve himself from imprisonment upon a conviction before the judge, he may do so by making an assignment which shall be for the benefit of this class of creditors, as the assignment under the sixth article was for the benefit of those creditors who had charged him in execution. The debtor should, however, after he has made the assignment pursuant to subdivision 3, § 10, proceed under the subsequent sections of the act, for the purpose of obtaining his discharge. He should give the notice required by section 14 to the *plaintiffs* by whom he shall be *prosecuted*, except that he is relieved by subdivision 3, § 10, from giving notice to the plaintiff, that is, the plaintiff at whose instance he has been arrested and brought before the officer. The officer is authorized to grant adjournments at the instance of the defendant: thus the defendant may have all the time necessary to give notice to his other creditors who have *prosecuted* him, in other words, sued him. This view, it seems to me, harmonizes many of the conflicting difficulties which have been started. It is impossible for me to reconcile many of the provisions of the statute with the position that the assignment is to be exclusively for the benefit of the creditor who initiated the proceedings by warrant for the arrest of the debtor. Such a construction, too, will bring this statute in direct conflict with those principles of equitable distribution of an insolvent's estate among his creditors, which have been so often repeated by the legislature of this state. The principle that equality among

---
Hall *v.* Kellogg.
---

creditors is equity, is found stamped upon all our insolvent laws. In all the articles in part 2, chap. 5, title 1 of the revised statutes, except the 6th article, the distribution of the insolvent's estate is to be made among all those who were creditors at the times mentioned. This is the great leading principle. Can we suppose that the legislature, in the act of 1831, (non-imprisonment act,) intended to reverse this principle, and to give to the creditor who should first institute a suit, the right to adopt measures which should result in the appropriation of the entire property of the debtor to the payment of his debt, to the exclusion of all other creditors, and this too in defiance of the desire and will of the debtor, that his creditors should share his property equally, in proportion to their debts? I can find nothing in the act which requires such a construction.

In the present case, all the creditors who are before the court (and we know of no others) were judgment creditors at the time McKnight elected to make an assignment. They were all creditors of that class whose right to arrest and imprison was abolished by the first section of the act. They had all procured warrants from the same judge, and McKnight had been arrested upon all these warrants. Some of these warrants were probably improperly issued, that is, the affidavits upon which they were issued, were insufficient. But this will not in my opinion affect the question, as they were all judgment creditors and were in a position entitling them to proceed by warrant. The plaintiffs had made the first demand upon McKnight, to apply his property in payment of their debt, and he had refused. They first applied for, and obtained a warrant; McKnight concealed himself to avoid the arrest and to enable his other creditors to obtain judgments and warrants, and the plaintiffs claim under these circumstances that they are entitled to a priority in the payment of their debt out of the funds in the hands of the assignees. In my opinion they are not so entitled. The fund should be distributed among all the creditors in this suit in proportion to the amount of their debts respectively.

Several cases arising under the non-imprisonment act, have been decided by the late supreme court, and an important de-

cision has been made by the court of appeals. I have not hitherto referred to them. I am aware that the views here taken, appear to conflict with the language employed by the court in some of them, and perhaps with the decision in *Berthelon* v. *Betts*, (4 *Hill*, 577.)

In *The People* v. *Abel*, (3 *Hill*, 109,) the defendant had presented a petition to a supreme court commissioner and had prosecuted his proceedings to a discharge. The proceedings were removed to the supreme court, where it was held that the commissioner had no jurisdiction. The facts stated in the petition did not give jurisdiction. The petitioner prayed that his estate might be assigned for the benefit of *all his creditors*, and that his person might be *exempt from arrest or imprisonment by reason of any debt arising upon contracts previously made.* The court say, " the nature of the proceeding seems to have been totally misapprehended.". Judge Bronson says, " under the act of 1831, as I read it, the assignment is not made for the benefit of all, but only for the benefit of a particular class of creditors ; and the discharge does not exempt the debtor from arrest or imprisonment generally, but only exonerates him from being proceeded against for fraud by those creditors who have commenced suit, (§ 17 *and* 39.) I think the discharge only affects those creditors who either have applied or are entitled to apply for a warrant for the arrest of the debtor under the 3d section of the act, and that those are the only creditors who are entitled to a dividend. But that question need not be settled upon the present occasion." I have cited the language of the learned judge as it supports the conclusion to which I have arrived. I do not however claim for it, the force of a decision.

In *Berthelon* v. *Betts*, (4 *Hill*, 577,) the defendant had been proceeded against under the non-imprisonment act, and had made an assignment. He had also, after his arrest under the act of 1831, at the instance of the plaintiff, presented his petition to the district court of the United States, under the United States bankrupt law, praying a discharge, &c. A sufficient amount of funds came into the hands of the assignee under the act of 1831, to pay the plaintiffs' debt, and the plaintiffs made a

motion that the assignee pay his debt. This was opposed upon the ground that the assignee in bankruptcy was entitled to the fund. Justice Cowen held that the non-imprisonment act was not suspended by the United States bankrupt law. He says, "our insolvent laws are no further suspended than they seek, upon notorious grounds, to seize and distribute the effects of the debtor among his *creditors generally*. Such is not the effect of that branch of the non-imprisonment law now in question. It refers to article six, of the revised statutes concerning voluntary assignments by imprisoned debtors, following out, in the main, such details as are there prescribed, and finally, it is true, directing a *dividend*; but this cannot in the nature of things, nor indeed by the provisions of the statute, be extended beyond the particular creditor or creditors by whom the debtor is pursued."

I have some difficulty in understanding the language which I have copied. I concur in the position, and have endeavored to show, that the distribution, under the non-imprisonment act, is not to be among the "creditors *generally*," but only among a certain class of creditors. He says it refers to article 6th of the revised statutes, and declares that the act of 1831, follows out in the main such details as are there prescribed, and finally, he says, it is true, directing a *dividend*; but he adds, this cannot in the nature of things, nor indeed by the provisions of the statute, be extended beyond the particular creditor or creditors by whom the debtor is *pursued*. If the learned judge means that no creditors can participate in the dividends except those who have *pursued* the debtor, by instituting suit, then as I have already shown I concur. He uses the terms creditor or *creditors* by whom the debtor is pursued. As we have seen from section 14, notice of the presentation by the debtor of his petition, &c. is to be served personally on the *plaintiffs* by whom such defendant shall be *prosecuted*. One, who is sued for a debt is *prosecuted*; he is pursued; plaintiffs in the plural is here used. The whole section follows closely section three, of article six. There however the language is, "on the *creditors* at whose suit he shall be *imprisoned*." This language was not adapted to the system designed by the non-imprisonment

act, as the object was to *avert* imprisonment by a surrender of property before commitment; hence the change of the language to *plaintiffs* and *prosecuted.* If the meaning of Justice Cowen is as I have suggested, then *Berthelon* v. *Betts* is an authority in support of the views I have taken of the statute.

The next case to which reference is made is *Moak* v. *DeForrest,* (5 *Hill,* 605.) The only point decided in that case is that the defendant cannot be arrested on a warrant issued under the 5th section of the act of 1831, out of the county in which the officer issuing it resided. There are some remarks near the end of the opinion to the effect that the warrant is no more than a statute execution against choses in action and other effects of the debtor, &c. that it is process by which the creditor may coerce the payment of a debt for which the debtor has been prosecuted. "That process, says the judge, was intended as a substitute for an execution against the person, and is predicated upon certain alledged frauds committed by the debtor with a view of eluding payment. The object of the process undoubtedly is to coerce the payment of the debt or to compel an assignment. But the debtor, under this proceeding as under the *ca. sa.,* can defeat both by going to prison; or he may pay the debt; or he may make an assignment as he could when imprisoned on a *ca. sa. He has the election,* and the question returns, if he assigns his property, who are to have the avails? It is said the warrant is a statute execution. The creditor certainly acquires no lien upon the debtor's property. He cannot take it by the process. He may, by the warrant or imprisonment so coerce the debtor that he may pay, or elect to assign his property and apply for a discharge; if the debtor does assign, then again the question recurs, who are to share in the assignment? None of these cases decide this question. It was not presented in any of them, nor has it, as I am aware, been presented in any case until the present.

In *Spear* v. *Wardell,* (1 *Comst.* 144,) decided in the court of appeals, the plaintiff had recovered judgment against C. & C. E. Wardell. He procured a warrant under the 5th section of the non-imprisonment act, and caused their arrest. Pending the

Hall *v*. Kellogg.

proceedings before the officer who issued the warrant, the Wardells made a *voluntary* assignment to an assignee selected by them, for the benefit of *all* their creditors. The proceedings upon the warrant were continued before the judge, who decided, pursuant to the 9th section, to commit them. They then made an assignment to the assignee appointed by the officer, and applied for a discharge under the act of 1831. The bill was filed to set aside the voluntary assignment and to compel the application of the property assigned, to the payment of the plaintiffs' debt. The chancellor dismissed the bill, and the plaintiffs appealed. The court of appeals reversed his decree, and decided that the voluntary assignment for the benefit of all the creditors, pending the proceedings under the act of 1831, was a fraud upon those proceedings and the act, and that Spear had by his proceedings acquired a right of priority in the payment of his debt over the creditors generally of the Wardells, and they directed that his debt be first paid.

The question presented in the case under consideration did not arise in that case. There the debtors attempted to defeat the policy of the act of 1831. They attempted, after they were arrested, to confer upon *all their* creditors an equal interest in their property. It does not appear that any of their creditors, except Spear, had instituted suits, or were in a condition entitling them to pursue the new remedies given by the sections from 3 to 9 of the act. The simple question, upon which the chancellor and the court of appeals differed, was whether an assignment under the act enured to the benefit of the creditors generally; the chancellor holding that it did, and the court of appeals held that it did not. The views I have expressed in this case are not in conflict with the *decision* in *Spear* v. *Wardell*. But I readily admit that they are not in accordance with the arguments and language used by the learned judges who delivered opinions. The case is only an *authority* upon the *question decided*, and with the views I entertain I should have concurred in the *decision*, though not in some of the arguments and remarks of the learned judges whose opinions are published. Judge Bronson says that "it had been settled, so far as the

supreme court could settle it, that the property goes to the particular creditor who compelled the assignment, to the exclusion of all others, until his debt is paid." The chancellor had not so understood the decisions. It is enough, however, to say that the question presented in the present case was not involved in *Spear* v. *Wardell.* Here all the creditors, parties to this suit, had obtained judgments and were pursuing the debtor under the provisions of the act. And if I understand the opinion of Judge Wright, it is not against the position that *these creditors* may share in the estate of the debtor, assigned. (See p. 154 to 158 of his opinion.) I cannot think that a creditor, who has made a demand upon his debtor to apply rights in action, and upon the debtor's refusal, has applied for and obtained a warrant to arrest him, a few moments or hours before other creditors have taken the same steps, has thereby acquired a right to have his whole debt first paid. In my opinion the judgment directed at the special term should be reversed, and judgment should be entered, declaring the rights of all the creditors in this suit to participate in the distribution of the assigned estate, and directing the assignee, Babcock, to distribute the net proceeds of the property assigned, among all the creditors in this suit ratably in proportion to the amount of their debts respectively.

TAGGART, P. J. and HOYT, J. concurred.

MULLETT, J. dissented.

Judgment reversed.

[CHAUTAUQUE GENERAL TERM, September 6, 1852.  *Taggart, Marvin, Hoyt* and *Mullett,* Justices.]