# SUPREME COURT

# SPECIAL TERM REPORTS.

## VOL. 3.  NO. 4.

### JEFFERSON COUNTY BANK vs. EDWARD PRIME, JOHN WARD AND SAMUEL WARD.

Under the act to abolish imprisonment for debt, and to punish fraudulent debtors, passed in 1831, (known as the Stillwell act,) the proceedings are never for the benefit of the creditors at large, except in the single instance of an assignment after the debtor shall be convicted of a misdemeanor, and that up to the execution of the assignment they are for the benefit of the prosecuting creditor alone.

Whether after the assignment, it shall enure to the exclusive benefit of the prosecuting creditor and others situated like him (that is, who have commenced suits or obtained judgments, and made demand,) *Quære?*

The prosecuting judgment-creditor, being entitled to a preference over the creditors generally, either for himself alone, or for himself and others of a certain class, it then becomes "unjust" under the statute for the debtor to resist or defeat his claim.

It is not necessary that the refusal of the debtor to apply his assets to the payment of the prosecuting judgment should be *fraudulent* to authorise a warrant of arrest or commitment. It is enough that the refusal be *illegal* in violation of law, in contravention of rights acquired by the creditor under the statute. It then becomes unjust because it is illegal.

Thus, where it appeared that in answer to the demand of the creditor, that the debtors should apply certain assets to the payment of his judgment, the debtors had offered to make a general assignment for the benefit of all their creditors, that they exhibited an assignment to that effect already drawn, and offered then to execute it, but the creditor objected to their doing so, because he had by his demand and their refusal, obtained a prior right to those assets over the other creditors, and thereupon the debtors refused to make the application demanded of them, because it would give the creditors a preference to the extent of those assets at least; *held*, that such refusal to apply was "unjust" within the meaning of the statute, (no fraud being imputed to the debtors) and the creditor was entitled to a warrant of commitment.

15

The supreme court (*in banc*) have no power to stay proceedings on the issuing of a warrant of commitment in such a case, for the purpose of review by certiorari. The creditor, under the statute, is entitled to the warrant of commitment if demanded.

*Nov.* 23, 1847. *Before Edmonds, Justice.*—The Plaintiffs on the 1st Nov. 1847, applied to Edmonds, Justice, for a warrant against the Defendants, under the act of 1831, to abolish imprisonment for debt, &c., upon affidavits setting forth that they had obtained a judgment against the Defendants for $89,915.31 " on contract, for which, pursuant to the provisions of said act, they could not be arrested or imprisoned;" that after obtaining such judgment the Defendants had exhibited to the attorney, and to the president of the bank, a schedule of assets, consisting of debts owing to them valued at about $50,000, and that thereupon the attorney had demanded of the Defendants, collectively and individually, they having been partners as bankers in the city of New York, under the firm of Prime, Ward & Co., that they should apply said assets to the payment of the judgment. The affidavits contained the further averment, that " the said Defendants had unjustly refused so to do," instead of setting out the terms of such refusal.

On a warrant issued to the sheriff of New York, the Defendants were arrested and brought before the judge.

N. B. BLUNT, *for the Defendants,* moved for their discharge, on several grounds arising out of the form of the affidavits, which being overruled, he then filed the allegation of the Defendants in the following words: " The Defendants controvert the fact and circumstances of an unjust refusal."

This not being on oath, the Plaintiffs, G. C. Sherman, of counsel, offered evidence in support of their charge. From the evidence it appeared that in answer to the demand that Defendants should apply the before mentioned assets to the payment of the judgment, the Defendants had offered to make a general assignment for the benefit of all their creditors, that they exhibited an assignment to that effect already drawn, and offered then to execute it in the presence of the attorney of the bank, but he objected to their doing so, because he had by his demand and their refusal obtained for his bank a prior right to those assets, over the other creditors, and thereupon they refused to make the application demanded of them, because it would give the bank a preference to the extent of those assets at least.

Upon this testimony, Sherman, for Plaintiffs, demanded a warrant to commit.

BLUNT, contra, objected because the object of the act of 1831, was to produce an equal distribution among all creditors, and it was not unjust for the Defendants to refuse to do that which would defeat this object.

EDMONDS, Justice.—This is an application under the act to abolish imprisonment for debt, and to punish fraudulent debtors, for a warrant to commit the Defendants to close custody for unjustly refusing to apply their assets, amounting to some $50,000, to the payment of a judgment obtained against them by the Jefferson County Bank, for $89,915.31. There is no allegation of fraud or unfair dealing in the case, but it is on one side, a claim by the bank, that under that statute, they have obtained a preference over all other creditors, and that therefore it is unjust in Prime, Ward & Co., to refuse on demand, thus to apply their assets, and on the other, a claim by Prime, Ward & Co., that such preference would be unjust and contrary to their willingness and intention to make an equal distribution of their effects among all their creditors.

The question is one then merely of law, involving the construction of that statute, except that it may perhaps become necessary to consider one of fact growing out of the terms of the demand and refusal.

The provisions of the statute applicable to this case are, that in all cases where a Plaintiff has obtained a judgment founded upon contract, he may apply to a judge of this court for a warrant to arrest the Defendant, upon satisfactory evidence to be adduced to such officer, that the Defendant has rights in action, money or evidences of debt, which he unjustly refuses to apply to the payment of that judgment.

The Defendants have been brought before me on such a warrant, and as allowed by the statute, they have controverted the allegation of an unjust refusal. On that point, proof has been taken before me, and from the evidence, it appears that on the twenty-ninth of October, the Defendants exhibited to the attorney of the bank a list of their assets, which he demanded that they should apply on its judgment, which they refused to do, at the same time avowing their readiness to make a general assignment for the benefit of all their creditors; and I am now called upon to take the next step authorised by the statute, namely, if I am satisfied that the allegations of the complainant are substantiated, to direct that the Defendants be committed to the jail of the county, where they shall remain in custody in the same manner as other prisoners on criminal process, until they shall assign their property and obtain their discharge, as provided in that act.

The professed object of the statute is to abolish imprisonment for debt

and to punish fraudulent debtors; but it contains many provisions which aim only at enabling the creditor, in a certain class of cases, to enforce the collection of his demand. Thus, while it authorizes the commitment of the debtor to custody as a prisoner on criminal process, and his conviction as guilty of a misdemeanor, it permits him to be discharged from his commitment on paying the debt in question; on giving security to pay the debt in sixty days; on making an assignment of his property, or on giving a bond that he will within thirty days apply for an assignment of his property and a discharge.

And in analogy to the proceedings against one who has been convicted of crime, and sentenced to the state prison, (2 R. S. 14, Art. 2,) when the debtor shall be thus convicted of the misdemeanor, trustees may be appointed to take charge of his property and distribute it among his creditors, and may have his person, any place occupied by him, his trunk or other article possessed by him, searched for money or evidence of debt to be delivered to the trustees.

The statute has then a double aspect, as a civil remedy and a criminal proceeding, and it cannot be well understood without keeping this consideration constantly in view.

So far as it is a civil remedy (except where the debtor may be induced by fear of commitment to pay the particular debt) it seeks to attain its purpose by means of an assignment of the debtor's property, and it is not a little singular that after fifteen years practice under the law, it should at this moment be a matter of doubt for whose benefit such assignment shall be made—the creditors at large or the pursuing creditor alone.

That question is now distinctly presented to me, and I cannot decide it without running counter either to the views of the Supreme Court, or to the court of chancery.

The question arises before me in this form: If the prosecuting creditor did, by his proceedings, obtain a right to priority of payment, then it was unjust for the Defendants to refuse the demanded application of their assets, and a case is made out to warrant their commitment. In the *People* v. *Abel*, 3 Hill, 109; in *Buthelon* v. *Betts*, 4 Hill, 577, and in *Moak* v. *De Forest*, 5 Hill, 605, the Supreme Court clearly intimate their opinion that the proceeding under the act of 1831, is for the benefit of the prosecuting creditor, to enable him to collect his debt, and that the assignment enures to his benefit rather than to that of all the creditors While on the contrary the Supreme Court in *Townsend* v. *Morrell*, 10 Wend. 577, and the chancellor in *Spear & Ripley* v. *Wardells*, (decided August 4, 1847,) as clearly intimate the contrary opinion; and that if

the imprisonment does not coerce from the debtor payment or security of the particular debt, but does coerce an assignment, that will be for the benefit of all the creditors.

When the case of the Wardells was before me as circuit judge, I intimated views similar to those afterwards expressed by the chancellor, though I purposely abstained from deciding the point. I committed the Defendants in that case, because, on a demand of them like that made of Prime, Ward & Co., they had refused to apply their assets to the payment of the particular judgment, on the ground of their intention to make an equal distribution among all their creditors. But I decided so to commit, not because I had arrived at a satisfactory conclusion on the point now again before me, but because of the opinion which the supreme court had intimated, because the practice in the hall had been, as I was informed, in conformity with such an opinion, and in the expectation, on my so ruling, that the case would be taken to that court for review.

The supreme court, however, refused to review it; and if the decisions of our courts now remained in the same condition in which they were then, I might, on a matter where I find it so difficult to arrive at a satisfactory result, pursue the same course in this case which I adopted in that. But since that time the chancellor has intimated an opinion contrary to that on which I rested my decision to commit the Wardells, so that I am no longer at liberty to repose on an obiter dictum of the supreme court any more than on a similar opinion of the court of chancery; and as there has not been in either court any express decision on the point, I am compelled, so far as may be practicable, amid these conflicting dicta, to arrive at a satisfactory conclusion for myself, in reference to the meaning of this unhappy statute.

The proceedings under it, have been sometimes regarded as in the nature of a statute execution, that is, as a statutory means of enforcing the payment of debts. In some respects this may be a just view. Thus, if the Defendant before arrest, and in answer to a demand made under the 4th section, applies his evidence of debt to the payment of a judgment against him, it is pro tanto a means of enforcing payment of a debt. So, if after his arrest, and before his commitment, he does, under the 10th section, pay the debt, or give security for its payment within sixty days, it becomes a means of coercing satisfaction.

Thus far there is no reference to any other than the pursuing creditor, nor any other end apparently aimed at than the payment of his particular debt, and upon the satisfaction of that debt the proceedings end, and the frauds or injustice complained of are purged, except that for some portion

of them the debtor may, under the 26th section, be indicted and convicted of misdemeanor.

These proceedings which may thus result in the payment of the debt, do not seem to be preliminary to, or necessarily connected with the ultimate conviction for a misdemeanor. Their whole object seems to be the payment of the debt, and their purpose fully to be answered when that end is attained, and thus far, it is most manifest that the principal object of the proceedings is a preference of the prosecuting creditor over all others, for when that preference is attained the proceeding ends. .

Whether that same purpose continues to inhabit the other proceedings under the statute is the question before me. Before discussing that, I pause a moment to consider how far that purpose infects the end of the proceedings—the *ultima thule* of the statute—for conviction for a misdemeanor; for if the same purpose characterizes the beginning and the end of the proceedings, we should be much more ready to believe in its intended influence over the intermediate parts.

By the 26th section of the act, a debtor who has been guilty of some of the acts which authorized his arrest in the first instance, under the 3d and 4th sections, may be convicted of a misdemeanor, and by section 27, trustees of his estate may be appointed, and those trustees are subject to the same duties and obligations as trustees appointed under the 2d article of title 1, of chapter 5, of part 1, of the Revised Statutes, 2 vol. § 15.3; Id. 46, § 36; those trustees are bound to distribute the estate in their hands among those who were creditors at the time of issuing the warrant. So that the first proceeding, which is founded on a mere charge of fraud, may result in lawfully giving the prosecuting creditor a preference over all other creditors, while the final proceeding, which is a conviction of fraud, necessarily results in depriving him of that preference, and places all on a par. About the matter thus far, that is the beginning and the end of the proceedings contemplated by the statute, there is no doubt—the one aims at a preference of the prosecuting creditor, and the other at equality among all creditors. How it is with the other proceedings under the statute, and which of these two conflicting opinions governs them, is the question.

When the debtor has been arrested on the warrant, and he does not pay the debt which is pursuing him, or secure its payment, he can avoid a commitment only by making an assignment of his property. For whose benefit is that assignment? The chancellor, in *Spear, &c.* v. *Wardell*, and Chief Justice Savage, in 10 Wend. 577, express their opinion that it is for that of all the creditors. Judge Bronson, in 3 Hill, 109, deems it to be for the benefit of the prosecuting creditor, and others who are sit-

uated like him in regard to proceedings under the statute, while Judge Cowen, in 5 Hill, 605, seems to suppose it is for the benefit of the prosecuting creditor alone.

These conflicting views tend to make more visible the obscurity through which I am compelled to grope my way to a clear view. I must therefore invoke the aid of any light which I may obtain from any of the provisions of the statute.

I will therefore trace the proceedings through, to see if I can discover the end they aim at in this regard.

To avoid the commitment when he does not pay or secure the prosecuting debt, the debtor must either make an inventory of his estate and an account of his creditors and execute an assignment on which the same proceedings shall be had as on a petition by the debtor, or give a bond that within thirty days he will apply for an assignment and discharge, section 10. This application by section 12, is to be by petition that his property may be assigned and he have the benefit of the provisions of the act. That benefit, by section 17, is to exonerate him from being proceeded against for any fraud committed or intended by him before his discharge, not merely by that prosecuting creditor, but by any creditor entitled to a dividend of his estate.

The benefit he prays for is not merely a discharge from the proceedings of the prosecuting creditor in respect to frauds affecting him alone, but from proceedings by any creditors entitled to proceed against him in respect to any fraud committed or intended by him. The proceedings, then, of the debtor to obtain a discharge are not against his prosecuting creditor alone, but also against all who, from their condition, are entitled to proceed against him; and it can hardly be supposed that the statute intended that while he could thus be discharged in respect to a number of debts that the surrender of his property, on which the discharge is founded, should be for the benefit of one of those creditors to the exclusion of others. He asks, however, for a discharge against more than the prosecuting creditor. With his petition, he is to present an account of his creditors, sect. 10 and 13. Why this, if no one is interested in the proceeding except the prosecuting creditor? Under all the articles of tit. 1, of chap. 5, of the 2d part of the Revised Statutes, where the debtor applies for a discharge in respect to all his debts by assigning his property for the benefit of all, he is required to present an account of his creditors, but under the single article (6th,) where he applies for a discharge only in respect to the prosecuting debt by assigning only for the benefit of that creditor, he is not required to present an ac-

count of his creditors. This becomes significant when we remember that this title of the Revised Statutes is frequently referred to in the act of 1831, whose provisions we are considering.

Besides his petition, and the account of his creditors, the debtor is also to present an inventory of his estate, similar in all respects to that required by the above mentioned sixth article. The chancellor in *Spear* v. *Wardells*, seems to regard this reference to the Revised Statutes as an oversight in the statute, because the sixth article contains no provision for an account of creditors. But I understand this reference not to relate to the account of creditors, but to the inventory of the estate, and for good reason. It must be constantly kept in mind that the sixth article here referred to, provides for an assignment for the benefit of the prosecuting creditor alone, and the inventory required from him is a very different thing from that required from the debtor when he assigns for the benefit of all. (See 2d Rev. Stat. 31, § 4.28, § 2.17, § 5.)

So that while the "account of creditors" seems to indicate that some one besides the prosecuting creditor may be interested in the proceeding, the inventory of the estate would seem to indicate that he alone was to be concerned. May not this apparent inconsistency be reconciled by adopting Judge Bronson's view of the statute, and regarding the assignment and the discharge as relating to the prosecuting creditor, and others so situated that they may become such under the statute.

The next step in the proceedings would seem to confirm this view. With his petition, account and inventory, the debtor is to present his affidavit, similar to that required by the same sixth article. Now that affidavit is very different from that required under the 3d and 5th articles, where the assignment is for the benefit of all. The difference consists in this, that under the articles where the assignment is general, the debtor is required to make oath that he has not paid, secured, or compounded with any of his creditors, with a view to obtain the prayer of his petition, or with a view that they should abstain or desist from opposing his discharge. But that clause is not required in proceedings under the 6th article, where the assignment is for the prosecuting creditor alone; nor is it required in proceedings under this act. This fact, in connection with another, namely, that articles 3 and 5, which require this clause in the oath, also contain provisions denying a discharge to a debtor who has given a preference; and that article 6, which does not require this clause, does not contain any such interdict against preferences, create quite a strong inference that a preference was contemplated; that at least it was not forbidden, if not distinctly aimed at throughout.

The next proceeding is for the debtor (sec. 14) to give fourteen days notice of the presentation of his papers, and this he is to give not to all his creditors but to the prosecuting creditor alone, thus looking as if he alone was to be regarded as interested. Yet the next section (15) allows any creditor to oppose the application, thus looking as if all might be interested. Here, again, it may be asked if this apparent inconsistency is not reconcilable on Judge Bronson's view of the statute?

The next proceeding is the assignment which is to be executed in the same manner and with the like effect as provided in the 5th article the Revised Statutes.

The chancellor, in *Spear* v. *Wardells*, understands this effect to be to vest the property in the assignee for the benefit of all, &c. This was my view of the case, when passing upon the application of the Wardells, and also, when the case now in hand first came before me. But from a more careful examination of the statute I see difficulties in the way.

The 16th sec. of the act of 1831, says the assignment shall be executed with the like effect as declared in the 5th article. Now the 5th article does not declare the effect of the assignment to be for the benefit of all, as the chancellor supposes, and the sections which he cites as sustaining that view, are sections not of the 5th article but of the 8th article, and the statute of 1831 has not brought in any part of the 8th article to eke out the force and effect of the assignment.

The 5th article, sec. 9, says "the insolvent shall execute an assignment with the like effect as declared in the 3d article," and the 3d article, section 28, declares such assignment shall vest in the assignee all the interest at the time of executing the same in any estate or property, real or personal, whether legal or equitable. With a single exception, which I shall proceed to mention, this is all the effect which article 5 gives the assignment, and it is only when we pass to the sections in the 8th article cited by the chancellor that we find directions for distributing the property among all the creditors.

The exception I allude to is this: The assignment made under article 5, vests in the assignee of all the debtor's property except what is exempt from execution, while the assignment under the 3d article vests in the assignee all the property except wearing apparel and bedding, and the insolvent's arms and accoutrements as a militia-man. I have among my papers (for I was a member of the assembly in 1831) the bill as it was reported to the house by the select committee, and on examining it I find that this reference was originally to the 3d article, so that the assignment would pass all but wearing apparel, bedding and arms, but the legislature

altered it to the 5th article, so as to exempt from the operation of the assignment all the property that was exempt from execution.

Hence the otherwise apparently awkward reference to the 5th article.

With this explanation, and on a careful examination of the several statutes, I find that all the effect given by the 16th section of the act of 1831 to the assignment is to vest in the assignee all the interest of the insolvent, at the time of executing the same, in any estate or property real or personal, whether such interest be legal or equitable, except such as is exempt by law from execution, and that the effect is not by that section so to vest for the benefit of all creditors, and cannot be without invoking the aid of the 8th article, which the act of 1831 does not authorise.

Thus far as we have progressed in the history of the proceedings under this act, we have arrived at one conclusion : that the act does not in terms declare that the assignment is for the benefit of all creditors. Let us resume our progress, to see if we can discover, by necessary implication, for whose benefit it is in fact to be.

The next step is the discharge, (sec. 17,) and that shall " exonerate the debtor from being proceeded against by any creditor entitled to a dividend as hereinafter provided, under the 3, 4, 5, 6, 7, 8 and 9 sections of the act, for any fraud intended or committed before such discharge."

By transposing the members of this sentence, we shall have less difficulty in arriving at its meaning.  It shall " exonerate the debtor from being proceeded against under the 3d, &c. sections, for any fraud, &c., by any creditor entitled to a dividend as hereinafter provided." No creditor can proceed unless he has obtained a judgment or commenced a suit, and it is against the proceedings of such creditors alone that the discharge operates.

One thing must be constantly borne in mind, and that is, that throughout the whole of the act of 1831 the legislature have had constantly in view the insolvent laws of the state, as they then existed, and have repeatedly manifested their intention to apply to this new law the principles of those laws as far as was practicable.

One of those principles, which pervades them all, is that the distribution of property is among those who are affected by the discharge.  Thus, under the 3d and 5th articles the discharge is from all debts owing at the time of the assignment, (2 R. S., 22, § 30; Ib., 30, § 10;) and the distribution is among those who were creditors at that time, 2 R. S., 46, § 36.  Under the 4th article, (2 R. S., 27, § 17,) the discharge and the dividend, (2 R. S., 47,) are the same.  Under the 6th article the debtor is discharged from his imprisonment, (2 R. S. 32, § 11,) and the dividend is among the credi-

tors at whose suit he is imprisoned, (2 R. S. 47.) The same principle carried into the act of 1831 would again confirm Judge Bronson's view of the statute, and make the dividend among those against whom the debtor was discharged, that is, among those who were in the same situation with the prosecuting creditor.

The 18th section contains the provision made by the act of 1831 for the powers and duties of the assignee. It declares they shall be all those specified in the 8th article of the Revised Statutes, and he shall be subject to the same duties, obligations and control, and shall make dividends.

This section is undoubtedly the hereinafter provided mentioned in the 17th section, but unfortunately it does not aid us in the solution of the question under consideration, because the 8th article, which is referred to in such general terms, contains three distinct modes of distribution, viz: among all the creditors, among those alone who prosecute, and among those who prosecute and others who choose to join them. 2 R. S. 46, § 36, and the 18th section of the act of 1831 does not declare or even intimate which of these modes of distribution shall be adopted, but leaves us where it found us in this respect. The statute does not itself profess to contain any farther provisions in reference to the assignment or the dividend than those I have already alluded to. It does, however, contain some other provisions calculated to show its general scope and intention, from which, in the absence of express provisions, we are to ascertain its particular intention in this respect.

Thus, by sections 20, 21, a debtor in actual custody when the act went into effect, may, on making an assignment, obtain his discharge from that imprisonment, and the proceedings thereon shall be as hereinbefore provided; that is, he shall make an inventory as required in the 6th article, take the oath required there, present a petition as required there, and receive a discharge in effect precisely the same as there specified. Is not the inference almost irresistible that the assignment he may make must be for the benefit of those alone in respect to whom he is discharged, and thus carry out the remaining principle, governing proceedings under the 6th article?

Again, by sec. 24, whenever a bond given under the 10th sec. shall become forfeited, it may be prosecuted by the pursuing creditor, not by all, and he may recover on it the amount of his claim, not that of other creditors. Now, under sec. 10, the bond is to be given to the pursuing creditor, not to all, and its penalty is to be double the amount claimed by him, not an amount claimed by others.

The condition of the bond will be either that the debtor will, within thirty days, apply for an assignment, or that he will not remove any of his property with intent to defraud any of his creditors, and that he will not assign or dispose of it with such intent, or with a view to give a preference to any creditor for any debt antecedent thereto, until the demand of the pursuing creditor shall be satisfied, &c.

Thus the bond, and everything connected with it when it becomes forfeited by non-performance, look only to the satisfaction of the pursuing creditor.

Again, all the remaining provisions of the statute which are intended to carry out its principles in reference to small demands prosecuted in courts of justice of the peace, aim only at the collection of the demand of the prosecuting creditor and enure to his benefit alone.

Again, by sec. 12 of the act, any person against whom any suit shall have been commenced in a court of record, in which such person cannot be arrested or imprisoned may apply that his property may be assigned and he have the benefit of the act, although no warrant has been taken out against him under the statute. " The benefit of the act " which he will obtain will be a discharge from being proceeded against under the act by any of those who have brought suits against him, and the assignment which he may execute, must be for the benefit of those, as to whom he is to be discharged.

There is still another consideration, and the last growing out of this examination of the statute. It is this, that up to the time when the defendant is convicted, before the officer issuing the warrant, no person but the prosecuting creditor has a right to take any part in the proceedings, or exercise any control over them, or to receive any benefit from them, but after such conviction other creditors may take part and become interested to this extent—they may oppose the debtor's application for a discharge, and his discharge, when granted, may exonerate him from imprisonment in respect to their claim. From this it would seem that up to the period of the conviction the proceeding is for the benefit of the prosecuting creditor alone ; after an assignment, other creditors may come in and be benefited by it, but if the proceedings go to the extremity of an indictment for a misdemeanor, all the creditors are benefited and affected by it.

I have thus carefully examined all the provisions of the act of 1831, with a view of gathering, as clearly as possible, its intention in respect to the question before me, and in spite of my pre-conceived notions on the subject, formed, it would seem, from a superficial examination of it, I have

been inevitably conducted to the conclusion that the proceedings under the act are never for the benefit of the creditors at large, except in the single instance of an assignment after the debtor shall be convicted of the misdemeanor, and that up to the execution of the assignment they are for the benefit of the prosecuting creditor alone. Whether after the assignment, it shall enure to his exclusive benefit, or to the benefit of himself and others situated like him, (that is, who have commenced suits or obtained judgments and made demands,) is a question that I do not examine or attempt to decide. It is enough for the decision of the question before me, that I have arrived at the conclusion that the prosecuting creditor is entitled to a preference over the creditors generally, either for himself alone or for himself and others of a certain class, for then it becomes unjust under the statute for the debtor to resist or defeat his claim.

I do not understand that the refusal of the debtor to apply his assets to the payment of the prosecuting judgment should be fraudulent to authorize a warrant of arrest. It is enough that the refusal be illegal, in violation of law, in contravention of rights acquired by the creditor under the statute. It then becomes unjust because it is illegal.

I draw this conclusion from the careful manner in which the statute uses the word "fraud." Whenever proceedings are taken under the act before the creditor obtains a judgment on his demand, fraud must be made out to warrant an arrest. Thus, where the debtor is about to remove his property, "with intent to defraud his creditors," or has property or rights in action, "which he fraudulently conceals," or assigns or disposes of his property, or is about to do so "with intent to defraud," or has fraudulently contracted the debt;" but when a judgment has been obtained, and the debtor refuses to apply his assets in payment of it, the statute does not say fraudulently refuses, but unjustly refuses; and that in the same section, where the terms "fraud and fraudulently" have been carefully used in regard to all the other grounds on which a warrant may issue.

So that when it shall be established by the judgment of a competent tribunal, that the prosecuting party has a valid claim against the defendant, and when it is also established as a matter of fact, that the debtor has evidences of debt to which, as a matter of law, it is established that the creditor has a claim prior and more potent than the debtor himself or any other of his creditors, it is illegal and unjust for him to attempt to deprive his creditors of that right, and especially with the object of wresting from him the preference which the law gives him, and conferring it upon others to whom the law does not give it.

It is only necessary to contemplate the effect of a contrary rule to ap-

preciate its impropriety. The rights of these complainants to these assets being established to be superior to that of the defendants or their other creditors, upon what principle could I rule that it would be just for the debtors to deprive the complainants of this legal right, and confer it on some one else? Of what avail would it be to hold that the bank had this prior right, if it would be just for the Defendants to disregard it and distribute those assets among others? .By such a ruling, this provision of the statute, which professes to give a remedy to a judgment-creditor, would, at the option of the debtor, be rendered entirely inoperative.

It is not, therefore, necessary to make out fraud in such a case as this to warrant a commitment, and I repeat it, none has been made out or even imputed to the defendants in this case. It has been merely an assertion on their part of a right to make an equal distribution of their assets against a claim to a preference asserted on the other hand, and the law, as I understand it, being against them, the complainants are entitled of course, to the remedy which the statute gives them to enforce their right, and that is, the warrant to commit.

After the decision was pronounced, BLUNT, for Defendants, on a suggestion that it was their intention to sue out a writ of certiorari for the purpose of having the decision reviewed by the supreme court, moved the judge to suspend the issuing of the warrant to commit until the determination of the proceedings on that writ.

EDMONDS, Justice—After consulting with his brethren, then holding the general term, said it was their opinion that there was no power to stay the proceedings, and that if the prosecuting creditor demanded a commitment, it must be issued, and it was issued accordingly.