### No. 7735.

GAY & CO. VS. MRS. BLANCHARD, WIFE OF LUCIUS SUTHON.

32   497
108   50

32   497
116   821

Under the Civil Code, suretyship is an accessory contract, and presupposes the existence of a principal obligation.

One may become surety of a debt without consent of the debtor, but not without that of the creditor.

Hence when one is a principal obligor, he cannot, without consent of the creditor, transform that principal obligation into the accessory one of suretyship.

It is not sureties alone, who under our law enjoy the right of legal subrogation.

The right of discussion is a better test of the existence of the relation of suretyship than is that of legal subrogation.

Solidarity may be perfect or imperfect. In the former the co-obligors are mandataries of each other; in the latter they are not.

When two persons are bound by the same contract to a third for the same debt, and when one of these obligors has, upon payment of the debt, a right of subrogation thereto, and of recourse *for the amount paid* upon his co-obligor, any contract, between the creditor and the ultimate debtor whereby delay is granted or securities are surrendered or diminished, will discharge the obligor entitled to such recourse and obligation, unless his consent be obtained. If they are bound by separate contracts, the creditor must have accepted both obligations, and be privy to and have knowledge of the contract out of which grows this right of recourse of the one debtor upon the other.

When a party stipulates that another shall do a certain thing he thereby impliedly obligates himself to do nothing which may hinder or obstruct that other in doing the agreed thing.

APPEAL from the Fifteenth Judicial District Court, parish of Lafourche. *Beattie*, J.

Walter Guion, R. N. Sims, and Francis T. Nicholls for plaintiffs and appellants :

First—Novation is never presumed, and can only result from the manifest terms of an agreement clearly evidencing the intention of the creditor to alter the form of his debt. C. C. 2190.

Second—The delegation, by which a debtor gives to a creditor another debtor, who obligates himself toward such creditor, does not operate a novation unless the creditor has expressly declared that he intends to discharge the debtor who has made the delegation. 4 N. S. 98 ; 4 An. 281, 510 ; 5 An. 508 ; 9 An. 230 ; 11 An. 688 ; 14 An. 85 ; C. C. 2192.

This being the law, I do not conceive how there was any novation or *discharge by delegation*, for Mrs. Suthon was as much the principal debtor after that suit and judgment as before, and notwithstanding that another debtor (Pike) has come upon the scene, he was, as to Pugh, also a principal co-debtor with Mrs. Suthon, each bound for the whole debt.

Third—It will hardly be claimed that by failing to execute their judgment against Pike plaintiffs have discharged defendant ; indeed

32

such forbearance would not discharge Mrs. Suthon, even if she was a mere surety. *Vide* 15 An. 65, 522 ; 25 An. 182 ; 26 An. 192 ; 27 An. 307 ; 28 An. 385 ; 29 An. 732. But under no circumstances can Mrs. Suthon set up that she was ever at any time the surety of Pike.

Fourth—Suretyship necessarily implies a pre-existing debt for which the surety becomes bound if the originally-bound debtor fails to pay, C. C. 30, 35 ; but in this case instead of there being a pre-existing debt of Pike for which Mrs. Suthon bound herself, the reverse was exactly the case, and if the relation of surety ever existed between them it was rather Pike who became the surety of Mrs. Suthon than she his ; but no such relation existed, for, by assuming the payment of the notes sued on in this case, Pike did not obligate himself conditionally, nor bind himself to pay them only in the event of the failure of Mrs. Suthon to do so, but absolutely, unequivocally, and at all events. His assumpsit was a part of his own individual indebtedness, representing an amount due by him for the property bought by him.

Fifth—Our objections are that no evidence as to a granting of time to Pike by Pugh, or by E. J. Gay & Co., and no evidence of an extension of payment by either of them to Pike, could be heard under either the original answer or either of the supplemental answers, because : 1st, it was not alleged in the original answer that said alleged granting of time had been given without Mrs. Suthon's consent ; 2d, that it was inadmissible under the amended answers, because they were illegally filed, and that they changed the issues made up by the original answer, and that, by the same defendant, attempted to raise issues, which, under the original answer, would not admit of the introduction of evidence ; and 3d, that said evidence was irrelevant and immaterial, and that the issues in the case had been settled, finally and irrevocably, by judgment of this court rendered on the exception of prescription, which judgment was final and *res adjudicata.*

Sixth—No such time was granted, or extension of payment consented to, by plaintiffs as, in the eye of the law, would operate a discharge.

Seventh—There can be no novation, except by express declaration to that effect made by the creditor, that he accepts the delegated debtor in the place and stead of his original debtor, and absolutely releases and discharges the latter. C. C. 2192 ; 16 La. 474 ; 4 An. 509; 13 An. 238 ; 11 R. 511.

Eighth—Marcadé, vol. 4, pp. 587, 589, for distinction between novation proper and a novation by delegation.

Ninth—The case of Walton vs. Beauregard, 1 R. 301, cited by defendant, has been overruled by Jackson vs. Williams, 11 An. 93.

L. T. Suthon and J. S. Goode for defendant:

First—A judgment of a court is an absolute endorsement of a pre-existing right. A conditional judgment would be a contradiction in terms. There could not be such an anomaly as a conditional decree. The very idea is unreasonable, inconsistent with itself, and absurd upon its face.

Second—The proviso in the judgment was annulled by laches. Upon this principle we find that a promise to pay a debt by installments, if the creditor do not collect a claim assigned him, is conditional; and the creditor's fault in not collecting it, like the collection itself, extinguishes the obligation. Moore vs. Cochran, 15 La. 233.

A party, proceeding under a contract, whose condition the other has not performed, waives his right to insist thereon, and is bound absolutely. Rightor vs. Phelps, 1 Rob. 325.

A contract is to be enforced as if without a resolutory condition which the acts of the parties show they have waived. Bach vs. Slidell, 1 An. 375.

Moreover, the condition in this case was abrogated by the granting of the delays as stipulated in the agreement. The proposed extension was for one, two, and three years, and for one, two, and three years the creditors did, as a matter of fact, actually wait for the payment of their judgment. Indeed, the judgment remains unexecuted and unsatisfied even to this day.

Third—The extension of time granted released the surety.

Fourth—That the debt, originally due by Mrs. Suthon, as maker of the notes, has been novated by the assumpsit of Mr. Pike and the subsequent acts of the parties—the debt, the debtor, and the security alike being changed. C. C. 2130, 2189.

C. C. 2190 and 2192 do not apply to the case at bar.

Fifth—The true doctrine is that the discharge of the original debt may be established by the terms of the agreement or by the acts of the parties, "to ascertain whose intention all the attending circumstances must be weighed." Hennen's Dig. p. 993 § 1 and 2, etc; 2 N. S. 144; 29 An. 586. Simple laches will create novation. 4 N. S. 539; 18 An. 121.

Sixth—Under the law of France an extension of time to the principal debtor does *not* operate a discharge of the surety, C. N. 2059; our law is to the contrary. C. C. 3063.

Seventh—Then we read that the remission of the debt as to one debtor *in solido* discharged all co-debtors. C. C. 2203. An extension of time has a like effect. Story on Promissory Notes, marg. p. 414; Edwards on Bills and Notes, marg. p. 572. The form of the contract is not material. 15 An. 522.

The creditor can do nothing to impair the right of subrogation without releasing co-debtors. 8 An. 75 ; 29 An. 732 ; 15 An. 594 ; 6 R. 47. It matters not whether the delay be granted before or after judgment. 29 An. 734 ; Brandt's Law of Suretyship and Guarantee, 296.

Eighth—Do these principles apply to the case at bar ? In order to determine this question, it is only necessary to solve the problem as to whether or not Mrs. Suthon, should she have paid the debt, would have become subrogated to the rights of the plaintiffs as against her co-debtor, Pike ? That she would have been thus subrogated cannot now be a matter of serious doubt. There is no conflict of authorities upon the point. C. C. 2161, § 3 ; Suares vs. His Creditors, 3 La. 341 ; Baldwin vs. Thompson et al., 6 La. 475 ; Bonilla, Syndic, vs. Merlegals, 9 La. 216 ; Dobel vs. De la Vallade, 30 An. 604 ; vide, also, 8 Mart. 706 ; 2 N. S. 158 ; 3 N. S. 310 ; 6 N. S. 175 ; 4 La. 221·; 15 La. 213, etc.

Ninth—" Discharging or giving time to any of the parties is a discharge of every other party, who, upon paying the bill or note, would be entitled to sue the party to whom the discharge or time has been given." Bayley on Bills, p. 357. To the same effect will be found, likewise, Smith's Mercantile Law, 353 ; Story on Promissory Notes, 544 ; Kent's Commentaries, vol. 3, 111 ; Edwards on Bills and Notes, 572. And the doctrine is fully borne out by the following, among numerous other rulings of our own State courts : Callahan vs. Tanner, 3 Rob. 299 ; Nolte vs. His Creditors, 7 N. S. 13 ; Boutte vs. Martin, 16 La. 134 ; McGuire vs. Wooldridge, 6 Rob. 47 ; Freeman vs. Profilet, 11 Rob. 33 ; Frazier vs. Dick, 5 Rob. 249 ; Citizens' Bank vs. Dugué, 5 An. 12.

Tenth—Perfect or entire subrogation, therefore, *always* and *necessarily* accompanies the contract of suretyship. And this from the very nature of things. Bouvier ; C. C. 2106 ; 6 L. 475 ; Brandt's Law of Suretyship and Guarantee, p. 32, sec. 24 ; 73 N. Y. 214 ; Mills vs. Watson, 1 Sweeny (N. Y.) 374 ; Cornell vs. Prescott, 2 Barb. (N. Y.) 16 ; Marsh vs. Pike, 1 Landford's Ch. R. 210 ; Cherry vs. Monroe, 2 Barb. Ch. R. 618 ; Succession of Daigle, 15 An. 594 ; 1 R. 301 ; 9 An. 497.

The opinion of the court was delivered by

SPENCER, J. This case was before us in April last on an exception of prescription.

In 1870, Francis T. Nicholls sold to defendant, Mrs. Suthon, one half of a plantation for $10,000, represented by her four notes of $2500 each, falling due in 1871, 1872, 1873, and 1874, and secured by mortgage and vendor's lien.

In 1871, Mrs. Suthon sold this property to F. W. Pike, who, as part

of the price, assumed the payment of these four notes, Pike granting mortgage, etc., to secure the performance of his obligations.

W. W. Pugh became owner of these notes, and in 1874 sued Pike on his assumpsit, and to foreclose the mortgages. Pike confessed judgment in favor of Pugh " for the amount, and in manner and form as. prayed for in plaintiff's petition, and consents that judgment be entered according to the prayer of said petition. A stay of execution to be given me, *provided* Mrs. Suthon consents thereto, for one third for one year, one third for two years," etc.

It seems that Mrs. Suthon never gave, nor was called upon to give,. her consent to this stay of execution.

Subsequently Pugh transferred this judgment and the four notes to Gay & Co., who, in May, 1877, brought this suit, on the notes, against Mrs. Suthon, the maker. She plead by way of exception, prescription against the notes, which plea was sustained by the court below as to two of the notes, falling due in 1871 and 1872. Plaintiffs appealed, and that was the question before us last April. We affirmed that judgment. The question was whether the suit of Pugh vs. Pike, above referred to, interrupted prescription as to Mrs. Suthon. We held it did not, because she was neither the surety of, nor debtor *in solido* with, Pike.

If Mrs. Suthon was either the one or the other, then the suit did. interrupt prescription. Strangely, not to say *inconsistently,* enough, her counsel *now contend* that *she was* the surety of Pike, and press us to. reconsider the opinion then rendered. In other words, when seeking to escape on the plea of prescription, she was not the surety. Having got the benefit of that plea, to the extent of one half her debt, we are now told that she was the surety. If there were no other or better reason,. that of estoppel would preclude her from maintaining such a proposition now.

But we have been led to reconsider our views on the question, and have been thereby confirmed in their correctness.

Under our Civil Code, suretyship is an accessory contract, and presupposes the existence of a principal obligation. C. C. (old) 3004.

It is also a consensual contract, as between the creditor and the surety. One may become security for a debt *without the consent* of the debtor, but *not without that* of the creditor. C. C. (old) 3007.

It follows, necessarily, from these elementary principles, that where one is a principal obligor, he cannot without the consent of the creditor transform that principal obligation into the accessory one of suretyship. Defendant argues, no doubt correctly, that Mrs. Suthon, upon paying her notes in the hands of Pugh or Gay, would be legally subrogated to the original Nicholls' mortgage held by them, and could invoke and enforce it against Pike.

His next proposition is that sureties enjoy this right of full legal subrogation—*ergo* Mrs. Suthon is a surety. This argument is fallacious, in this, that it is not sureties alone who, under our law, enjoy the rights of legal subrogation. It also exists, first, in favor of one creditor who pays another creditor who is preferred to him; second, in favor of any purchaser of an immovable who employs the price of his purchase in paying credits mortgaged upon the property. Third, in favor of the *beneficiary heir*, who has paid succession debts with his own money. C. C. (old) 2157. Yet these are not cases of suretyship. In none of these cases are the persons paying sureties for the debts they pay. The test of *subrogation vel non* is therefore fallacious. Perhaps a better test of the existence of the relation of principal and surety will be found in the right of discussion. Our Code gives to the surety the right of requiring the previous discussion of the property of the principal before resort is had to him. C. C. (old) 3014, 3015, 3016, and 3017.

Applying this test, it is manifest that Mrs. Suthon was not the surety of Pike. Pugh or Gay were under no obligation to discuss Pike's property before resorting to her. They could have wholly disregarded Pike in the matter, and have proceeded against her personally or hypothecarily, and she would have had none of the rights granted by articles 3014, 3017 of Civil Code. *As between her and the holder of her notes*, she was not, therefore, the security of Pike, but a principal debtor. The contract of suretyship is one created and governed by the Civil Code, and we will follow that, whatever may be the rule at common law. But the citation from Brandt's Law of Suretyship and Guarantee, p. 32, sec. 24, does not go to the extent claimed, since the author expressly limits its application to the case as between the assumer and assumee, i. e. as between Pike and Mrs. Suthon. He seems to think that because the latter would, upon payment to the creditor, be subrogated, that puts her in the position of "any surety." No doubt to that extent her rights are the same as a surety would have, but that does not make her a surety.

We held in our former opinion that Pike and Mrs. Suthon were not debtors *in solido* in the sense of the Code. Solidarity may be 'perfect or imperfect. It is perfect, and the obligors are the mandataries of each other, when by the same act, at the same time, they bind themselves to the performance of the same thing. It is imperfect (and they are not mandataries of each other) when they bind themselves to the same thing by different acts or at different times. See Marcadé, vol. 4, p. 509; also, 12 R. 183 ; 2 An. 332 and 792 ; 15 An. 168.

While, therefore, we think it clear that Mrs. Suthon was neither security of, nor co-obligor *in solido* with, Pike, still she was bound "with" him for this debt; and as Pike was, under his contract with her, the ultimate debtor, upon her paying the debt, she was entitled to a full

subrogation thereto, as well as to the mortgages and privileges securing it. This was expressly held in the case of Baldwin vs. Thompson, 6 La. 475, a case in all respects similar to this. She now alleges that she has been discharged from her obligation on the two remaining notes, for the reason that Pugh and Gay & Co., without her knowledge or consent, extended time to Pike, and compromised with him touching said debt, so as to hinder, delay, and impair her right of pursuit, on paying the debt.

We take the rule to be that where two persons are bound to a third, for the same debt, and where one of these obligors has, upon payment of the debt, a right of subrogation thereto, and of recourse for the amount paid, upon his co-obligor, any contract between the creditor and the ultimate debtor, whereby delay is granted, or securities surrendered or diminished, will discharge the obligor entitled to such recourse and subrogation if his consent be not obtained. The creditor in such case must maintain a position which will enable him to subrogate the party paying to all the original rights, privileges, and actions incident to the debt. See 1 R. 301 ; 9 An. 497 ; Bayley on Bills, 357; Story on Prom. Notes, 544 ; 3 R. 299.

Has Pugh or Gay, by any agreement of theirs, put it out of their power at any time to give to Mrs. Suthon this full subrogation and right of pursuit of Pike? If so, she is discharged.

We find nothing in the confession of judgment having that effect. The stay of execution was expressly conditioned upon Mrs. Suthon's consent thereto, and was inoperative if she refused to consent.

But we find Gay & Co. entering into contracts with Pike, which in our opinion precluded them from enforcing the judgment and mortgage against Pike ; and which therefore deprived them of ability to subrogate Mrs. Suthon to the full extent to which she was entitled.

On 19th day of May, 1877, Gay & Co. entered into a contract with Pike to furnish him money and supplies to enable him to cultivate and manufacture a crop of sugar on the mortgaged premises. The advance was to be of $750 per month, but not to exceed in the aggregate for the year $10,500. These advances were to be made by Gay & Co. upon the following conditions, to wit: That said Pike shall cultivate the said plantation to the best advantage, so as to produce thereon a successful crop of sugar, etc.; that as fast as the crop is ready for market, he will ship it to Gay & Co., of New Orleans, to be sold in the usual way ; that the proceeds of said crop should be first applied by Gay & Co. to the re-imbursement of their said advances, and any surplus over that sum they were to apply to sundry other debts held by them against Pike, and among these is enumerated the debt now in question before

us.  Pike further pledges the crop for all these debts, and binds himself to ship Gay & Co. the whole thereof.

On 24th January, 1879, Pike leased the same plantation, for one. year, to Ed. J. Gay of the firm of Gay & Co. for the sum of $1000, for which Gay gave his note, and which note Pike agrees to deliver to Gay & Co. at once, as a credit on his debt to them.

During the continuance of either of these contracts, could Gay & Co. have foreclosed their mortgage and sold the place?  They could not. have done so, without thereby forcing Pike to violate his contracts with them.  They stipulated and Pike promised, that he would cultivate that place during the year 1877, and that the proceeds of the crop should go. to the discharge of his debts to Gay & Co., including that now sued on. By the contract of lease Gay stipulated and Pike promised, that the former should have the enjoyment of the place for one year.  Under both contracts Pike was to be advantaged and 'benefited to the extent. his debts were paid.  Gay & Co. would have violated both agreements by seizing and selling the property, thus rendering it impossible for. Pike to fulfill his engagements under either.  We take it, that where a. party stipulates that another shall do a certain thing, he thereby impliedly promises that he will himself do nothing which may hinder or obstruct that other in doing that thing.  Had Gay & Co. attempted the seizure and sale of the place during the continuance of these contracts,. Pike would have had the undoubted right to enjoin them, as violating. the implied obligations of their contracts.

If Gay & Co. could not themselves have executed the judgment,. they could not by subrogation have conferred such right on Mrs. Suthon. *Nemo plus juris ad alienum transfere potest quam ipse habet.*

We hold therefore that Mrs. Suthon has been discharged from liability to pay the two remaining notes, by the act of the creditor.

We think the court *a qua* did not err in permitting defendant to amend her answer, and set up additional grounds of defense, as there was no inconsistency.

The judgment below was in favor of defendant.  It is correct, and is affirmed with costs of both courts.

---

### ON APPLICATION FOR REHEARING.

The opinion of the court was delivered by .

SPENCER, J.  We held in our former opinion in this cause, that where two persons are bound to a third for the same debt, and where one of these obligors has, upon payment of the debt, a right of subrogation thereto, and of recourse, for the amount paid, upon his co-obligor, any contract between the creditor and this *ultimate* debtor, whereby delay is granted, or securities are surrendered or diminished, will discharge the obligor

entitled to such recourse and subrogation, if his consent be not obtained. This proposition, as an abstract one, requires this modification, to wit: Where the obligors are bound by separate contracts to the creditor for the same debt, the creditor must have accepted both obligations, and be privy to, and have knowledge of, the contract out of which grows this right of recourse of one of the debtors upon the other.

We do not understand the counsel for plaintiffs in his learned and able brief for rehearing to seriously question this proposition.

We understand him to maintain,

First—That Pike was not the debtor of Gay & Co., but of Mrs.. Suthon only ; that Gay & Co. were only the mandataries, with an interest to receive payment from Pike of what he owed Mrs. Suthon.

Second—That Gay & Co. could not by any act of theirs in any manner affect, abridge, or hinder Mrs. Suthon's recourse upon Pike upon her paying her note held by them.

We are unable to give our assent to either of these propositions. We think the first is in conflict with the provisions of the Civil Code relative to stipulations for the benefit of a third person. When Pike, in his contract with Mrs. Suthon, to which Gay & Co. (or rather Pugh, their author) became party by their acceptance, assumed and promised to pay Gay & Co. the notes of Mrs. Suthon, held by them, the legal result was to give Gay & Co. another and additional debtor. When Gay & Co. accepted the stipulation, there was created a direct obligation from Pike to them to pay the notes, as much so as if Pike had actually added his signature to the notes themselves, or accepted a draft drawn on him by Mrs. Suthon for their amount. True, there was no novation of the debt. There was simply an additional obligor bound for it. It is true that in some sort Gay & Co. may be said to have become the mandataries of Mrs. Suthon, but they had substantive rights of their own against Pike, growing out of his promise to pay notes held and owned by them. They were certainly his creditors, and a payment to them alone would extinguish the obligation contracted in their favor.. In Baldwin vs. Thompson, 6 La. 479, referred to by us in our former opinion, one Kohn sold to Baldwin, taking notes for the price. Baldwin sold to Green, who assumed and promised to pay Baldwin's notes held by Kohn. This court held that "in pursuance of the doctrine of *stipulation pour autrui, Green became Kohn's debtor, * * * for he expressly* stipulated to pay to Kohn the debt which Baldwin owed."

Second—We think the fundamental error of the second proposition. arises out of forgetfulness of the fact, that the notes held by Gay & Co. were secured by *two mortgages*, to wit : one granted by Mrs. Suthon, to Gen. Nicholls in her act of purchase from him, and one granted by Pike to Mrs. Suthon and Gay & Co. in his purchase from Mrs. Suthon..

It is argued with much earnestness, that Gay & Co. and Pike could not, by any arrangement of theirs, without Mrs. Suthon's consent, impair or in any way affect her recourse on Pike upon her paying the notes held by Gay & Co. We have seen that in the case of Baldwin vs. Thompson, referred to above, it was held that Baldwin on paying his notes to Kohn, was subrogated legally to the mortgage which he had himself granted, and could enforce it not only against his vendee, Green, but against Thompson, Green's vendee.

Now will it be said that Gay & Co. were not the owners and masters ·of the Nicholls' mortgage? If they had entered of record a full release thereof, could Mrs. Suthon on subsequently paying her notes have ·enforced it against the property in Pike's hands? Were they not also the owners and masters of the notes held by them? If they had extended their payment by Pike for five years, could Mrs. Suthon, subsequently taking them up, have enforced their payment at once against Pike? It may be that Mrs. Suthon, on payment of the notes, could have enforced the mortgage which Pike granted her, any agreement between Gay & Pike to the contrary notwithstanding, because her rights thereunder were original and not derivative. But it is manifest that Gay &'Co.'s act and contracts relative to the Nicholls' mortgage would have been binding on her; and as Gay & Co. were privy to the contract wherefrom resulted her right of subrogation to this mortgage and her right of recourse on Pike, they were bound to maintain such attitude with reference thereto as would enable them to give her, at all times, the subrogation and recourse she was entitled to. They entered into ·contracts with Pike, the effect of which was to put this out of their power for about two years. They thereby discharged her.

The rehearing is refused.