|1FITZSIMMONS, Judge,
dissenting.
When the Louisiana Civil Code drafters announced that law was a “solemn expression of the legislative will,” they were subscribing to the doctrine of legislative supremacy.[1] Our Louisiana Civil Code provides that “the sources of law are legislation and custom.” La.C.C. art 1. Legislation is defined as “a solemn expression of legislative will.” A custom “results from practice repeated for a long time and generally accepted as having acquired the force of the law.” La.C.C. arts. 2-3. According to civilian doctrine, legislation and custom are authoritative or primary sources of law. They are contrasted with persuasive or secondary sources of law, such as jurisprudence, doctrine, conventional usages and equity, that may guide the court in reaching a decision in the absence of legislation and custom. See Yiannopoulos, Louisiana Civil Law System §§ 31, 32 (1977).
Although these sources of law are the pri-us of all Louisiana legislation, historically, our Constitution and customs envisage that the courts will perform law revision and law adaptation functions in order to maintain the coherency and currency of the law. Nevertheless, in the small proportion of cases in which judicial law-creation is appropriate, such power must be exercised subject to traditional restraints. Analogical development is proper only insofar as it is consistent with, and deepens the aims of the historical forces that motivated adoption of the legislative text. Jurisprudential creation of laws must be in accord with the reasoned development of pre-existing doctrine rather than to express any personal philosophy of the judges. William Thomas Tete, The Code, Custom and the Courts: Notes Toward a Louisiana Theory of Precedent, 48 Tul. L.Rev. 1 (1973). See also Albert |2Tate, Jr., The Law-Making Function of the Judge, 28 La.L.Rev. 211 (1968).
Therefore, rules of law formulated by judicial decisions represent the danger of unforeseen judicial law-making, disregarding the civilian concept that judicial decisions are only interpretations, and that law results *752 from legislation alone. To this end, I respectfully disagree with that specific portion of the Supreme Court’s judicial interpretation of the Louisiana Civil Code articles pertaining to the existence of solidarity among obligors in the cases of Hoefly and Williams. “There is no prescription other than that established by the legislature.” La.C.C. art. 3457.
A solidary obligation for obligors is defined by Louisiana Civil Code article 1794 as an obligation where “each obligor is liable for the whole performance. A performance rendered by one of the solidary obligors relieves the others of liability toward the obligee.” An obligation in solido is never presumed. It must be expressly stipulated by the parties or arise from the law. La.C.C. art. 1796. The articles following the definitional article 1794, do not define solidarity. Those articles describe the legal effects of a finding of solidarity.
The “definition of solidary obligations consists of three elements: multiple debtors; liability of each for the whole debt; and release of all by one’s payment.” Schewe, Bruce V. & Thomas, Martha Quinn, Prescribing Solidarity: Contributing to the Indemnity Dilemma, 41 La.L.Rev. 659, 672 n. 105 (1981), citing Note, The Non-solidness of Solidarity, 34 La.L.Rev. 648, 648 (1974). An obligation is in solido, if, and only if, the obligations under review contain all three elements.
Nevertheless, we have made solidarity complex by consistently distinguishing its very being. A distinction between perfect and imperfect solidarity existed in our jurisprudence before its abrogation by the court in Foster v. Hampton, 381 So.2d 789 (La.1980). Solidarity was perfect, “and the obli-gors mandataries of each other, when by the same act, at the same time, they [bound] | sthemselves to the performance of the same thing. It [was] imperfect ... when they [bound] themselves to the same thing by different acts or at different times.” Gay v. Blanchard, 32 La.Ann. 497, 502 (1880). “Had Louisiana followed a consistent doctrinal scheme in classifying solidary obligations as solidary or not and as perfect or imperfect, the distinction abolished in Foster might have been warranted to preserve doctrinal purity. As a practical matter, the distinction would have been useful in some cases in which parties were bound for the whole but were not bound so intimately that the interruption of prescription by suit against one was justified.” Schewe & Thomas, supra, at 683 (footnote omitted).
Besides interruption of prescription, Hoef-iy avoided discussing the effects arising from a finding of solidarity. “The question of the effect of payment by one debtor” was not explored. Mona Howard Miller, Proportionate Prescription-An Alternative for Applying Changes in Liberative Prescriptive Periods, 43 La.L.Rev. 777, 778 (1983). In Williams, the court found that the partial payment by the employer, to the extent of the obligation owed under worker’s compensation laws, exonerated the debt owed by the tortfeasor to the extent of the payment. Based on this partial payment and partial release, the Williams court found that the requirement that payment by one exonerated all the obligors as to the creditor was met. Williams, 611 So.2d at 1388-89. Why focus on “partial” when the definition found in article 1794 centers on the “whole?” The essential element of solidarity is not partial release by a partial payment, but liability of all for the whole and the release of all by the payment of one. Only in the presence of such an intrinsic relationship of debtors can interruption of prescription be just.
Hoefiy and Williams embarked upon a course to extend prescription by application of solidarity. If prescription needs to be extended to preserve the rights of the plaintiff (id est, to save the plaintiff from a too short prescriptive period for tort), one should note that the general prescriptive period in France was (an absolute) 30 years. Under scrutiny, this period was reduced and ^modified depending on the type of action and the legal relationship existing between the parties.
The whole thrust of the concept of prescription is not to compete with solidarity, but rather to coexist with it. While solidarity will interrupt prescription, this interruption should not be such as to emasculate prescription. The objection against solidari *753 ty is akin to the objection posed against suspension of prescription: “that it frustrates the benefit one expects from prescription.” See Aubry & Rau, chapter IV, The Concept of Prescription.
The application of the principles of solidarity to the case before us would not merely “extend” or “interrupt” prescription as to any tortfeasor whose actions netted co-existent harm to the victim, solidarity vis a vis prescription would dilute the true concept of prescription: prescription thus becomes a time line without a term.

. Shael Herman, The Louisiana Civil Code: A European Legacy for the United States, 18 (1993).